## GUTHRIE *v.* HARKNESS.

### ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 9. Submitted, April 6, 1905; ordered for oral argument, May 8, 1905; argued October 16, 1905.—Decided October 30, 1905.

States have no power to enact legislation contravening Federal laws for the control of national banks, but such banks are, for actions against them at law or in equity, deemed citizens of the States in which they are located, and the Federal courts have such jurisdiction only as they have in cases between individual citizens of the same States.

The shareholder has a common law right, for proper purposes and under reasonable regulations as to time and place, to inspect the books of the corporation of which he is a member.

The possibility of the abuse of a legal right affords no ground for its denial, and while an examination of the books of a corporation should not be granted for speculative or improper purposes, it should not be denied when asked for legitimate purposes.

Where stockholders of a national bank have the legal right to enforce inspection, the state court has authority to enforce the right by granting the proper relief in a judicial proceeding. Nothing in sec. 5211, Rev. Stat. requiring reports by, or in sec. 5240, Rev. Stat. providing for examination of, national banks cuts down the usual common law rights of shareholders in such corporations.

The term *visitorial powers* as used in sec. 5241 does not include the common law right of the shareholder to inspect the books of the corporation.

THE defendant in error was the owner of nearly one-fifth of the capital stock of the Commercial National Bank of Ogden, Utah. As such shareholder he applied for leave to inspect the books, accounts and loans of the bank, which was refused him. He alleges the reasons for seeking such inspection to be that he might ascertain the value of his stock in the bank and whether the business affairs of the same had been conducted according to law. He charges that loans had been made to patrons of the bank of more than one-tenth of the capital stock in violation of law, and that an inspection of the books, accounts and loans of the bank would reveal other irregularities. Upon the hearing in the District Court the following findings of fact were made:

"1. That the Commercial National Bank of Ogden, Utah, is a corporation organized and existing under and by virtue of the laws of the United States; that said corporation is doing a banking business in Ogden City, Weber County, State of Utah; that the capital stock of said bank is $100,000, divided into 1,000 shares of the par value of $100.00 per share.

"2. That the defendants are directors and have under their control and in their possession all books, papers, accounts and loans of said Commercial National Bank.

"3. That there is no acting cashier of said bank, and that there has been no such cashier since the first day of November, 1902; that J. W. Guthrie is president; A. R. Heywood, vice president, and R. T. Hume is assistant cashier of said bank.

"4. That on or about the first day of February, 1903, plaintiff made a demand upon said directors at the banking house of said bank and also upon J. W. Guthrie as president, A. R.

Heywood as vice president and general manager of said bank, and upon R. T. Hume as assistant cashier of said bank, for permission to permit plaintiff to inspect all books, accounts and loans of the said bank, and plaintiff made demand for such inspection at such time or times as would not interfere with the proper conducting and operating of said bank.

"5. That each and all of said persons refused permission to plaintiff to inspect the said books, accounts and loans of said bank at any time or at all, and they still refuse to permit such inspection.

"6. That the plaintiff is the owner and has in his possession 183⅓ shares of the capital stock of said bank of the par value of $18,333.33, and that said stock appears on the stock books of said bank in the name of the said plaintiff.

"7. That plaintiff sought and now seeks the inspection of the books, accounts and loans of said bank for the purpose of ascertaining the true financial condition of said bank and also for the purpose of ascertaining the value of his stock in said bank, and also for the purpose of ascertaining whether the business affairs of the said bank have been conducted according to law.

"The court further finds that sufficient reason exists for the inspection of said books and accounts of said bank."

Upon this finding the court entered a judgment requiring the defendants to permit the plaintiff to inspect the books, accounts and loans of the bank at such time or times as would not interfere with the business of the bank.

*Mr. Abbot R. Heywood* for plaintiffs in error:

A stockholder possesses no powers and rights of access to and inspection of all the books, loans and papers appertaining to the carrying on of the business.   § 5241 Rev. Stat.

For provision of Utah laws applicable see § 329 R. S. Utah, and penal statute § 4415, as to refusal of inspection of corporate books.

The trial court held that neither of these Utah statutes was applicable to corporations organized for banking purposes

under the laws of Congress. *Easton* v. *Iowa,* 188 U. S. 220; *S. C.,* in state court 85 N. W. Rep. 796; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275; *Prigg* v. *Pennsylvania,* 16 Pet. 539; *Farmers' &c. Bank* v. *Dearing,* 91 U. S. 29.

All the cases used by counsel for respondent below were anterior to the Easton case, when the state courts went to extreme lengths as in *Winter* v. *Baldwin,* 89 Alabama, 483; *Tuttle* v. *Iron National Bank,* 170 N. Y. 9. See Webster's dictionary for definition of "visitorial."

In business there is no more confidential relation established than that between the bank and its customer.

The customer trusts the honor and secrecy of the bank no less implicitly than he does their honesty. And it is as important that the affairs disclosed by the bank records be kept a secret as it is that the money be returned. It is possible to do lasting harm by revealing a customer's private affairs.

Such knowledge as this, if it were revealed, would also decrease the confidence of the public. These secrets should be all buried in the heart of the banker.

*Mr. Hiram H. Henderson,* with whom *Mr. Herbert R. Macmillan* was on the brief, for defendant in error:

The state court has jurisdiction. See § 4 of the act of March 3, 1887, 24 Stat. 552 as amended by act of August 13, 1888, 25 Stat. 433; *Petri* v. *Commercial Bank,* 142 U. S. 644; *Whittemore* v. *Amoskeag Bank,* 134 U. S. 527; *McClellan* v. *Chipman,* 164 U. S. 347.

Sec. 329 Rev. Stat. Utah does not give the right to examine the books of a national bank but the stockholder has a common law right to do so which has not been taken away or abridged by any act of Congress or otherwise. See opinion Vann, J., in *Re Steinway,* 159 N. Y. 250 and numerous cases cited therein; *Tuttle* v. *Iron National Bank,* 170 N. Y. 9; *State* v. *Pacific Co.,* 58 Pac. Rep. 584; *Winter* v. *Baldwin,* 89 Alabama, 483.

While there is no common law of the United States in the sense of a national customary law, yet where a point is decided

by the adjudged cases or laid down as settled in the books of
acknowledged authority, the Supreme Court should act upon
it as the common law, unless some act of Congress or local
suit or decision of the Supreme Court prescribes another rule.
*Homes* v. *Jennison*, 14 Pet., page 626; *Smith* v. *Alabama*, 124
U. S. 478; *Bucher* v. *Chesshire R. R.*, 125 U. S. 582; *United
States* v. *Wong Kim Ark*, 169 U. S. 660.

Sec. 5241 Rev. Stat. does not take away this right. As to
what is meant by *visitorial* see Webster and Century diction-
aries; *First National Bank* v. *Hughes*, 6 Fed. Rep. 737; *Waite*
v. *Dowley*, 94 U. S. 527; and as to how this provision was in-
serted in § 5241 see Blaine's Twenty Years in Congress, Vol.
1, ch. 22.

The lower court had a right to exercise a reasonable discre-
tion to what extent the defendant in error would be permitted
to examine the books and accounts of the bank, and as its dis-
cretion was reasonable and just, with no showing to the con-
trary on part of the plaintiffs in error, this court will not permit
the plaintiffs in error, for the first time, to find fault with that
discretion.

*Easton* v. *Iowa* has no bearing upon the case.

MR. JUSTICE DAY, after making the foregoing statement,
delivered the opinion of the court.

While the State has no power to enact legislation contra-
vening the Federal laws for the control of national banks,
*Davis* v. *Savings Bank*, 161 U. S. 275, Congress has provided
that for actions against them at law or in equity they shall be
deemed citizens of the State in which they are located, and
that in such cases the Circuit and District Courts of the United
States shall have such jurisdiction only as they would have in
cases between individual citizens of the same State. 25 Stat.
433. If the stockholders had the legal right to enforce inspec-
tion there is no room to question the authority of the state
courts to enforce the right granting the proper relief in a judi-

cial proceeding. *Petri* v. *Commercial Bank*, 142 U. S. 644; *Continental National Bank* v. *Buford*, 191 U. S. 119, 123.

Upon review in the Supreme Court of Utah the judgment of the District Court was affirmed, it being held that it was the common law right of the shareholder to have the inspection demanded, and that the same had not been cut down by the act of Congress regulating the business of national banks. 27 Utah, 248.

There can be no question that the decisive weight of American authority recognizes the common law right of the shareholder, for proper purposes and under reasonable regulations as to place and time, to inspect the books of the corporation of which he is a member. Morawetz in his work on Corporations, section 473, says:

"However, in the United States the prevailing doctrine appears to be that the individual shareholders in a corporation have the same right as the members of an ordinary partnership to examine their company's books, although they have no power to interfere with the management."

In many of the States this right has been recognized in statutes which are generally held to be merely in affirmance of the common law. Nor do we find the authorities making an exception as to this right when a corporation which does a banking business is the subject of consideration. It is said to be customary for banking companies in England to insert in their constitutions a provision forbidding the inspection of customers' accounts by shareholders or creditors. *Morgan's Case*, L. R. 28 Ch. D. 620 (1885); Cook Corp. § 517 note. The subject appears to be now regulated by statute in England. Cook Corp. § 518. In *Cockburn* v. *Union Bank of Louisiana*, 13 La. Ann. 289, it was held that a stockholder in the Union Bank of Louisiana had the right to a writ of mandamus to compel the officers of the bank to allow him the privilege of inspecting the discount books of the bank within proper and reasonable hours, and in the course of the opinion it was said:

"A stockholder in a corporation possesses all his individual

rights, except so far as he is deprived of them by the charter or the law of the land; as long as the charter or the rules and by-laws, passed in conformity thereto, and the law, do not restrict his individual rights, he possesses them in full and can demand to exercise them. It cannot be denied that it is the right of every one to see that his property is well managed and to have access to the proper sources of knowledge in this respect."

This case was cited with approval in *State ex rel. Burke* v. *Citizens' Bank of Jennings*, 51 La. Ann. 426, and *In Matter of Tuttle* v. *Iron National Bank*, 170 N. Y. 9, 12. In the latter case it was said: "The principle upon which a stockholder is allowed access to the books of a corporation is as applicable to the case of a banking corporation as it is to any other kind of corporation."

In *State of Missouri ex rel. Doyle* v. *Laughlin*, 53 Mo. App. 542, a stockholder in an incorporated bank had been denied by the directors the right to inspect the books for the purpose of acquainting himself with the conduct of its affairs and to learn how it was managed. The court there held that he was entitled to a writ of mandamus to compel the inspection, and this notwithstanding the bank contended that it occupied such a confidential and trust relation to its customers and depositors that it would be a breach of duty on its part to open up the books to the inspection of the relator. The authorities are fully examined and the right of the shareholders to inspect the books for proper purposes and at proper times is recognized in *In re Steinway*, 159 N. Y. 251; *Comm. ex rel. Sellers* v. *Phœnix Iron Co.*, 105 Pa. St. 111. To the same effect are *Deaderick* v. *Wilson*, 67 Tenn. 108, 137; *Lewis* v. *Brainerd*, 53 Vermont, 519, and *Huylar* v. *Cragin Cattle Co.*, 40 N. J. Eq. 392, 398. In the latter case it was said:

"Stockholders are entitled to inspect the books of the company for proper purposes at proper times. . . . And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is neces-

sary to their protection.  To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases.  Oftentimes frauds are discoverable only by examination of the books by an expert accountant.  The books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders."

The right of inspection rests upon the proposition that those in charge of the corporation are merely the agents of the stockholders who are the real owners of the property.  *Cincinnati Volksblatt Co.* v. *Hoffmeister,* 62 Ohio St. 189, 201.

It is suggested in argument that if the shareholder has this right it may be abused, in that he may make an improper use of the knowledge thus gained. . There is nothing in this record, however, to suggest, by way of argument or testimony, that the shareholder desired the information which the books would give for other than a lawful purpose.  On the other hand, there is a distinct finding that the inspection was desired for the purpose of ascertaining the true financial condition of the bank and for the purpose of enabling the complainant to find out the value of his stock, and whether its business was being conducted according to law.  There is no suggestion that the complainant was acting in bad faith or from improper motives, or that he was seeking in any way to misuse the information which the books would afford him.  We need not hold that there may not be circumstances which would justify the courts in withholding relief to a stockholder seeking an examination of the books and accounts of the bank.  In the case before us no reason is shown for denying to the stockholder the right to know how his agents are conducting the affairs of a concern of which he is part owner.  Many legal rights may be the subjects of abuse, but cannot be denied for that reason. A director, who has the right to an examination of the books, may abuse the confidence reposed in him.  Certainly this pos-

sibility will not be held to justify a denial of legal right, if such right exists in the shareholder. The possibility of the abuse of a legal right affords no ground for its denial. *State ex rel. Doyle* v. *Laughlin*, 53 Mo. App. *supra; People* v. *Goldstein*, 37 App. Div. N. Y. 550. The text books are to the same effect as the decided cases. Cook on Stock and Stockholders, sec. 511; Boone on Law of Banking, sec. 235; Angel & Ames on Corporations, 607.

It does not follow that the courts will compel the inspection of the bank's books under all circumstances. In issuing the writ of mandamus the court will exercise a sound discretion and grant the right under proper safeguards to protect the interests of all concerned. The writ should not be granted for speculative purposes or to gratify idle curiosity or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes. *In re Steinway*, 159 N. Y. 250; Thompson on Corporations, §. 4412 *et seq.*

We are unable to find in section 5211, requiring reports to be made to the Comptroller of the Currency, or in section 5240, providing for the appointment of examiners to investigate the condition of national banks, anything which cuts down the usual common law right in shareholders in such corporations.

In section 5210 it is provided that a list of shareholders shall be kept, subject to inspection by the shareholders and creditors of the corporation and the officers authorized to assess taxes under state authority. The purpose of this section seems obvious in view of the other provisions of the statute, authorizing taxation by the State, upon the shareholder (section 5219), and providing for the individual liability of the shareholder to an amount equal to his stock in cases of insolvency. (Sec. 5151.)

This court has said that one, if not the principal, object of this section was to require information as to the shareholders upon whom may rest individual liability for contracts, debts or other engagements of the bank. *Pauly* v. *State Loan and Trust Co.*, 165 U. S. 606, 608–621.

It is true that for some purposes a national bank is a public institution, notwithstanding it is the subject of private ownership. It may issue bills, which circulate as part of the currency of the country. It is subject to examination and in a large measure to the supervision of the Comptroller of the Currency. It is examined at stated periods, and may be the subject of special examination by order of the Comptroller. But it is owned by shareholders, like other banking institutions. It is subject by statute to be sued in the courts of the State. 25 Stat. 433. There is nothing in the banking act, as we read it, which limits a shareholder or shareholders, seeking knowledge for a lawful purpose of an institution in which they have a proprietary interest to an application to the Comptroller for an examination by a public officer of the affairs of their company. A director need only own ten shares of the stock. Rev. Stat. § 5146. The directors together need not necessarily own the controlling interest in the bank. Yet it is contended they, or the officers of their choice, may deny stockholders the privilege of inspecting for legitimate purposes the property which belongs to them.

But, it is said, the right of the shareholder to inspect the books is cut off by section 5241, providing "no association shall be subject to any visitorial powers other than such as are authorized by this Title, or are vested in the courts of justice." We are unable to find any definition of "visitorial powers" which can be held to include the common law right of the shareholder to inspect the books of the corporation. "Visitation" is defined by Bouvier (Dic. vol. 2, p. 1199) as follows:

"The act of examining into the affairs of a corporation.

"The power of visitation is applicable only to the ecclesiastical and eleemosynary corporations. 1 Black. Com. 480. The visitation of civil corporations is by the Government itself, through the medium of the courts of justice. See 2 Kent, 240. In the United States, the legislature is the visitor of all corporations founded by it for public purposes. 4 Wheat. 518."

The origin and nature of "visitatorial" power received full discussion in the case cited by Bouvier from 4 Wheaton. See opinion of Mr. Justice Story in *Dartmouth College case*, 4 Wheat. 673.

The meaning of this section was before Judge Baxter in the case of *First Nat. Bank of Youngstown* v. *Hughes*, 6 Fed. Rep. 737, and of the meaning of the term "visitorial powers," as used in section 5241, that learned judge said:

"Visitation, in law, is the act of a superior or superintending officer, who visits a corporation to examine into its manner of conducting business, and enforce an observance of its laws and regulations. Burrill defines the word to mean 'inspection; superintendence; direction; regulation.'"

At common law the right of visitation was exercised by the King as to civil corporations and as to eleemosynary ones by the founder or donor. 1 Cooley's Blackstone, 481. "In the United States the legislature is the visitor of all corporations created by it, where there is no individual founder or donor, and may direct judicial proceedings against such corporations for such abuses or neglects as would at common law cause forfeiture of their charters." 1 Cooley's Blackstone, 482, note.

In the case before us the Supreme Court of Utah quotes from Merrill on Mandamus as follows:

"Visitors of corporations have power to keep them within the legitimate sphere of their operations, and to correct all abuses of authority, and to nullify all irregular proceedings. In America there are very few corporations which have private visitors, and in the absence of such, the State is the visitor of all corporations."

In no case or authority that we have been able to find has there been a definition of this right, which would include the private right of the shareholder to have an examination of the business in which he is interested, and the right of discovery of the methods and means by which the agents of the corporation are conducting its affairs. The right of visitation

being a public right, existing in the State for the purpose of examining into the conduct of the corporation with a view to keeping it within its legal powers, Congress had in mind in passing this section that in other sections of the law it had made full and complete provision for investigation by the Comptroller of the Currency and examiners appointed by him, and, authorizing the appointment of a receiver, to take possession of the business with a view to winding up the affairs of the bank. It was the intention that this statute should contain a full code of provisions upon the subject, and that no state law or enactment should undertake to exercise the right of visitation over a national corporation. Except in so far as such corporation was liable to control in the courts of justice, this act was to be the full measure of visitorial power.

That the statute did not intend in withholding visitorial powers to take away the right to proceed in courts of justice to enforce such recognized rights as are here involved is evident from the language used. If the right to compel the inspection of books was a well-recognized common law remedy, as we have no doubt it was, even if included in visitorial powers as the terms are used in the statute, it would belong to that class "vested in courts of justice" which are expressly excepted from the inhibition of the statute.

Finding nothing in the act of Congress limiting the common law right of the shareholder, we think that, under the circumstances of this case, he was wrongfully denied an inspection of the books and accounts of the bank by its officers, and the judgment of the Supreme Court of Utah is

*Affirmed.*