STATE ex rel. ENGLISH, Appellant, v. LAZARUS et al., Respondents.

St. Louis Court of Appeals, November 18, 1907.

1. **CORPORATIONS: Foreign Corporations: Right of Stockholder to Inspect Books.** A foreign corporation, by accepting the provisions of the Missouri statute enabling it to do business in this State, subjects itself to the jurisdiction of a circuit court of this state to order an inspection of its books at the instance of a stockholder, where such books are shown to be within the jurisdiction of the court.

2. ———: ———: ———: **Common Law Right.** The right of a stockholder in a foreign corporation to inspect the books of the corporation is determined by the rules of common law and give him such right of inspection at reasonable times and for proper purposes, unless he is precluded by some statute or by the cor-

127 App—26

State ex rel. v. Lazarus.

poration's charter; a peremptory writ of mandamus to compel an inspection of corporation books should not be granted where the inspection is desired for speculative purposes, or to gratify idle curiosity, or to aid blackmail.

3. ———: ———: ———: **Extent of Rule.** The fact that a stockholder desiring inspection of a corporation's records is also a shareholder in a rival corporation, does not deprive him of his right, nor does the possibility that he may use the information gained by the inspection to the detriment of the corporation furnish a ground for denying the right of inspection.

4. ———: ———: ———: **Limits of Rule: Trade Secret.** A stockholder in a corporation engaged in the business of manufacturing cement should not be allowed to gain from an inspection of the books a knowledge of a secret process which the company had of manufacturing cement, where such stockholder is manager of a rival corporation.

5. ———: ———: ———: **Illegal Monopoly.** The fact that a stockholder seeking an examination of the corporation's books is also an officer and stockholder in an illegal monopoly engaged in the same business, does not deprive him of his right of inspection.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED (*with directions*).

*Richard A. Jones* for appellant.

The circuit court of the city of St. Louis had jurisdiction to make the order of peremptory mandamus to compel officers of appellee Acme Cement Plaster Company to allow appellant, a stockholder to inspect records described in the alternative writ. Swift v. State, 6 Atl. 864, 7 Houst. (Del.) 137; State ex rel. v. Land & Timber Co., 106 La., 633; Guthrie v. Harkness, 199 U. S. 158.

*W. E. Fisse* for respondents.

The plaintiff, to support the jurisdiction of the court in the present instance, relies wholly upon the provisions of section 1024, Revised Statutes 1899, which make foreign corporations, permitted to conduct and

carry on business in this State, subject to all the "liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State." It is noteworthy that the appellant has not cited any authority whatever giving to the provisions of the statute in question the construction for which he now contends. "The general rule on this subject is that such statutes, prescribing the conditions and regulations under which foreign corporations may do business in this State, will not be construed as domesticating such corporations for all jurisdictional purposes, unless such intention is clearly and unmistakably indicated by the affirmative terms of the statute, even where the original purpose was to do business in the particular State. Martens Admr. v. Railroad, 151 U. S. 673-683; Railroad v. Jones, 161 U. S. 545; Markwood v. Railroad Co., 65 Fed. 817.

GOODE, J.—Relator appeals from a judgment denying a peremptory writ of mandamus, commanding the respondents to permit him to inspect the books of the Acme Cement Plaster Company. Said company is incorporated under the laws of the State of Illinois, but its books are in the city of St. Louis, Missouri, in the custody of respondents Samuel Lazarus and Samuel Walker, who are respectively its president and vice-president, and the corporation itself is doing business in this State under authority of our statutes (art. IX, ch. 12, R. S. 1899). Relator, Otto B. English, is the owner and holder of twelve shares of the capital stock of said company and has been since 1900. He alleges that as such shareholder he is interested in the company's business, the value and location of its property and assets, the amount and character of its liabilities, its management, the magnitude of its business and profits, the proceedings had at the meetings of its stockholders and directors, and the names of the other stockholders; that

he has made repeated requests of the officers for information concerning these matters, but none has been given him; that on or about February 8, 1906, in default of such information, relator went to the office of the company in the city of St. Louis and requested Walker, as vice-president and custodian of the books in said office, to give relator the information he required but Walker refused to do so; that relator then requested an inspection of the books containing the records of stockholders and directors meetings, names of the stockholders, and the books in which were the accounts of the company, descriptions of its property and assets and their location; that said request was refused and relator was informed he could not get the information he desired except by a legal proceeding. The prayer of the relator was for an order for the inspection of the books and records of the company containing information regarding the matters above recited. In defense it is pleaded that the circuit court of the city of St. Louis has no power to grant the relief prayed, because the Acme Cement Company is organized under the laws of Illinois and has its chief office and place of business in the city of East St. Louis in that State; wherefore the jurisdiction to award such a remedy as relator prays is vested exclusively in the courts of the State of Illinois. In further defense it is alleged that another corporation, the United States Gypsum Company, is engaged in a business similar to the Acme Company's, is in commercial competition with the latter, interested in impairing its business and depreciating its stock, and that this action was instituted, not in good faith, but in behalf of said Gypsum Company; that the latter company is a monopoly and trust designed to control the business of manufacturing and selling cement plastering and therefore is violating the laws of the United States and the State of Missouri; that said Gypsum Company has endeavored to have the Acme Company enter into an arrangement to fix and con-

trol the output and price of cement plastering material, but the Acme Company has refused to make any such arrangement; that in consequence of such refusal the said Gypsum Company has for several years and in various ways, interfered with the business of the Acme Company and endeavored to impair and depreciate its stock; that the relator Otto English is one of the vice-presidents of the Gypsum Company and its traffic manager, and as such has attempted to prevent the Acme Company from getting good freight rates from railroad companies and thereby injure the Acme Company's trade; that this interference was made by representations to the railroad companies that the Acme Company had secured its freight rates by the false and fraudulent representations of its officers; that in furtherance of the purpose of the Gypsum Company to prevent the Acme Company from obtaining favorable freight rates, relator, as traffic manager, has threatened and declared his intention to subject the Acme Company and its officers and stockholders to the annoyance of an examination of its books and affairs, whereby facts would be discovered detrimental to the business of the Acme Company and showing that its freight rates were obtained fraudulently and deceitfully. The answer further says that the respondents, while willing at all times to furnish stockholders full and complete information of the affairs of the company, ought not to be compelled to furnish information to a competitor and particularly to one engaged in carrying on business by unlawful methods, or to one who intends to use the information to be derived from such inspection to the detriment and disadvantage of the company. It is further averred that relator's demand for an examination of the books was not for the purpose of enforcing any of his rights as a stockholder, but solely to annoy and injure the company by enabling the Gypsum Company to obtain and use for its own advantage, information concerning the affairs of

the Acme Company. It was averred, further, that Eng-
lish was not a shareholder of the Acme Company and
there was a general denial of the averments of the alter-
native writ. The evidence-established that English was
a stockholder of the Acme Company and had
been for eight or ten years, and, also, that he had, at
various times, requested information of the officers of
the Acme Company regarding' its condition and affairs.
Letters of his addressed to the president of the company
and requesting information regarding its business and
financial condition, were introduced in evidence. These
letters indicate that respondents were refusing to give
relator information on the ground that it would be used
to embarrass them and the company. English disclaim-
ed any such purpose and stated several times that his
only object was to obtain sufficient information to en-
able him to judge intelligently of the value of his shares.
It seems he had been offered fifty cents on the dollar for
his stock by some of the officers, but said he could not
place any value on it until he had obtained an insight
into the business of the company. There were several of
these letters written by relator, courteous in tone and
suggestive of no improper purpose on his part. It was
shown that he was the vice-president and general man-
ager of the Gypsum Company and that the latter was a
competitor of the Acme Company in the manufacture
and sale of cement plastering material; also that the
Gypsum Company had absorbed most of the other con-
cerns engaged in the same line of business east of the
Rocky Mountains and that there had been negotiations
for the consolidation of it and the Acme Company. It
further appeared that there had been a dispute between
the Gypsum and Acme Companies in regard to a freight
rate granted by one or more railroads to the Acme Com-
pany for transportation of its output to the Pacific slope,
and that the officers of the Gypsum Company contended
the rate was an unjust discrimination against it. Tes-

timony was likewise introduced by respondents tending to prove the Acme Company possessed and used a secret process in the manufacture of cement, which gave its product a better quality than other cement had, and was of great value; that it would be detrimental to the welfare of the company for relator, as an active officer of the Gypsum Company, to acquire knowledge of said process, because then the process would be used by the Gypsum Company in the manufacture of cement. Such, in substance, are the pleadings and the evidence on which the peremptory writ was refused.

1. As it was shown and, in fact, conceded that the books and records of the respondent company were in the city of St. Louis, Missouri, and in the custody of its officers there, the circuit court of said city had jurisdiction of the cause and could have ordered an inspection of the books, notwithstanding the fact that the company was organized under the laws of the state of Illinois and with its principal office therein. This proposition has been determined in well considered opinions and we know of no decision to the contrary. [Swift v. State, 7 Houst. (Del.) 137; State ex rel. v. Land & Timber Co., 106 La. 621, 633.] The present proceeding is not an attempt to exercise a visitorial power over the affairs of the corporation or control its management. It is simply intended to enforce a common law right enjoyed by the relator as shareholder, to examine the corporate records for proper purposes; and such remedy may be, and properly is, sought in the forum where the records are kept by their custodians; and it is our opinion that by accepting the provisions of the Missouri statutes enabling foreign corporations to do business in the state, the respondent company so far became subject to the jurisdiction of the Missouri courts that they may afford relief of the kind sought, if the circumstances are appropriate. The writ of mandamus goes really against the custodian of the company's books and in this instance the custodian

of them was in the jurisdiction of the court whereof relief was invoked, with the records in his possession. [People v. Troop, 12 Wend. 183.]

2. Relator's right to an inspection is to be determined by the rules of the common law, and perhaps in such a case the right is less absolute than when there is some statute giving it in unqualified terms. [State ex rel. v. Sportsmans Park Assn., 29 Mo. App. 326; State ex rel. v. Railroad, Id. 301.] But at common law a shareholder of a company has a right at reasonable times and for proper purposes, to examine the corporate records and books unless he is precluded by some statute or by some article of the company's charter. Neither has been shown to exist in the present case. Hence the inquiry is whether, on all the facts in proof, the purpose of the relator was such that this ordinary common law right of a shareholder should have been denied him. It was said in Guthrie v. Harkness, 199 U. S. 148, 156, that a court will exercise a sound discretion in granting the writ of mandamus to compel the inspection of corporation books and will use proper safeguards to protect the interests of all concerned; and, therefore, that the writ should not be granted for speculative purposes or to gratify idle curiosity or aid blackmail; but that it should not be refused to a shareholder who seeks information for legitimate purposes. That is an accurate summary of the law as laid down in the decisions and treatises. [In re Steinway, 159 N. Y. 250; Thompson, Corporations, sec. 4412.] The opinion further holds that the mere fact that the writ may be abused by the shareholder is no reason for denying its exercise. To the same effect are State ex rel. v. Laughlin, 53 Mo. App. 542, and In re Steinway, supra. In the latter case the authorities were reviewed and conclusions reached identical with those declared in Guthrie v. Harkness, supra. A reading of the decisions will show that various pretexts have been

put forward by officers of corporations for refusing to let a shareholder inspect the books, and that in almost every instance these reasons have been held insufficient to justify a refusal. Among the excuses resorted to were that the shareholder intended to use the information he might obtain to harass the company or its officers with law suits, or to compel a purchase of his stock, or to annoy other shareholders. In view of the well-known fact that men are often shareholders in different companies, and even officers of different companies, manifestly it cannot be held good ground for refusing inspection of the records of a particular corporation, that the person who requests the privilege is a shareholder and officer in another company, even if the other be a competitor in business. A man may hold stock in different banks or railroads or manufacturing companies which compete with each other and are rivals, and still be as much entitled as any stockholder to examine the books of either company. His right does not turn on the business rivalry of the companies with which he is associated, but on his purpose in seeking an inspection and whether, if he relies on the common law and not an imperative statute, his purpose commends itself to a court as reasonable and just. It was but natural that the relator, who had held shares in the Acme Company for years, should desire information regarding its affairs. This information he sought in the first instance not by a request to examine its books, but from the officers; that is to say, he wrote them requesting a statement of the condition of the affairs of the company, its business, profits and management. They gave him no information on the ground that he would use it to the detriment of the interests of the company. It is palpable that the possibility of the relator's doing that, was no good reason for keeping him in ignorance of the affairs of the company in which he is directly interested. He had received an offer of fifty cents on the dollar from the

officers for his stock, but said he could make no price until he ascertained its value; and this was the reason assigned for asking information.

The controversy which had arisen between the Acme Company and the Gypsum Company regarding the former's freight rate to the Pacific coast, is insisted on as a ground why relator, who is vice-president and traffic manager of the Gypsum Company, should not obtain information about the affairs of the Acme Company. The argument is this: that the Acme Company had obtained that rate on a representation to the railroad companies regarding the cost of manufacturing cement, and if English was allowed to examine the books, he might use the knowledge thus derived to induce the railroad companies to advance the Acme Company's rate. Suffice to say as to this argument, that if the Acme Company had in truth obtained a freight rate by false representations, this circumstance would not commend itself to any court as a reason for denying a stockholder the right to examine the books; and if no false representations were made, an examination of its books would disclose no prejudicial fact.

3. Nothing is said in the answer about the secret process for manufacturing cement owned by the Acme Company, but proof was made that it had such a process, and that fact is insisted on as ground for refusing to let relator examine its records. As he is an active manager of a rival corporation engaged in the same business, it would be unjust to reveal this process to him. The common law right to an inspection of books is not absolute but, as indicated above, may be controlled in the interests of justice. In our judgment this case presents an instance for the control of the right to the extent of safeguarding the respondent company from a revelation of its process of making cement. That is a valuable trade secret, and to permit a business competitor to learn it would be unfair. No doubt the substance of the relief

prayed may be granted and the secret preserved. The order of the court should be so framed as to afford relator the privilege of inspecting the company's books without putting him in possession of its process of manufacture.

4. Although the answer avers the Gypsum Company is a trust and doing business in violation of law and relator one of its officers, this matter had not been pressed as of itself a sufficient reason why the writ should be refused, and we can conceive of no theory on which it would constitute a defense. To be an officer and stockholder in an illegal monopoly certainly does not deprive a person of his right to look into the management of some other company wherein he holds stock. The proof does not show relator is seeking an inspection to aid an enterprise carried on contrary to law.

The judgment is reversed and the cause remanded with a direction to the court to grant relator relief, but to protect the respondent company's process of making cement. All concur.