**HUMBLE OIL & REFINING CO. v. DANIEL.**

**No. 4896.**

Court of Civil Appeals of Texas. Beaumont.

June 11, 1953.

Rehearing Denied July 1, 1953.

Felix A. Raymer and Frank L. Heard, Jr., Houston, W. C. McClain, Conroe, K. W. Gilmore, Houston, for appellant.

Phillip Robinson, Asst. Atty. Gen., Looney, Clark & Moorhead, Austin, as amicus curiae.

R. L. MURRAY, Chief Justice.

This suit was filed by Humble Oil & Refining Company, appellant, against Price Daniel, who was then Attorney General of Texas, as an ancillary proceeding to a case then pending in the District Court of San Jacinto County, styled Humble Oil & Refining Company v. Montgomery County, et al. That case originated in Montgomery County but on motion the venue thereof was changed and the cause transferred to the District Court of San Jacinto County. The object of the present suit was to obtain a determination of issues existing between the parties by way of a declaratory judgment under the provisions of Article 2524-1 Vernon's Annotated Civil Statutes, and for a restraining order and temporary injunction. A restraining order was issued as prayed for pending a hearing and after a hearing was had the restraining order was dissolved, the temporary injunction was denied and issues between the parties were decided in favor of the then defendant Price Daniel. Findings of fact and conclusions of law were filed and the appellant Humble Oil & Refining Company has duly perfected its appeal. After the case reached this court on appeal it was made known to the court that Honorable Price Daniel, defendant in the trial court, had vacated the office of Attorney General of Texas. On proper motion John Ben Shepperd, his successor in that office, was substituted as a party and appellee in this court.

The origin of the present controversy is found in the suit between the Humble Oil & Refining Company and Montgomery County, et al., which reached this court on appeal and in which a judgment favorable to Humble Oil & Refining Company was reversed and remanded for a new trial by this court. Montgomery County v. Humble Oil & Refining Company, Tex.Civ.App., 245 S.W.2d 326, writ of error refused, no reversible error. In that suit the Humble Company sued Montgomery County and its various officials for an injunction, seeking to enjoin the enforcement of certain tax assessments and collection thereof for the year 1950. After the case was remanded to the District Court of Montgomery County, Special Ninth District, the cause was transferred on change of venue to San Jacinto County, but before such transfer was made the State of Texas, acting through its Attorney General, Price Daniel, intervened in the suit and the court aligned it as a party defendant. The case was set for trial on November 5, 1952 and on October 10, 1952 the Attorney General of Texas delivered to Humble Oil & Refining Company a letter of visitation, which was a written demand for an inspection of Humble Company's corporate books and records. This letter, together with the appendix thereto authorized by the Attorney General, was as follows:

"To the President, Vice President and other officers and agents of Humble Oil & Refining Company Houston, Texas

"Gentlemen:

"You will please permit Frank Lake, authorized agent of the Attorney General of Texas, to make an examination and investigation of all books, contracts, accounts, records, minutes, letters, memoranda, by-laws, or any other records and files of the Humble Oil and Refining Company and to take or make copies thereof.

"I hereby authorize the above named person to represent me officially for the purposes set out above under the provisions of Articles 1366 through 1371 et seq., and Articles 7098 through 7104, Revised Civil Statutes of Texas.

"Yours very truly
"/s/ Price Daniel
"Attorney General of Texas"

"The object of this investigation or examination under this letter of visitation is to examine the books, records, files and reports of the Company with regard to the taxable or market value of the oil and gas properties owned by Humble in the Conroe field, Montgomery County, Texas, to take from your records photostatic copies and other data as indicated in the attached list for the purpose of using these data and information in the prosecution of the defense by the defendants and intervenors in the case of Humble Oil & Refining Company v. Montgomery County, et al., now pending in the Special Ninth District Court of San Jacinto County, Texas.

"Price Daniel
"Attorney General
"/s/ By Frank Lake
"Assistant Attorney General

Attached to such letter of visitation was a list of records which the Attorney General sought to examine, which list is as follows:

"1. Humble Oil & Refining Company's Annual Reports to Stockholders 1945 through 1950.

"2. Annual estimates made by Humble of the recoverable oil reserve under its properties in the Conroe Field, Montgomery County, Texas, each year 1945 through 1950.

"3. Humble's estimate of ultimate recoverable oil reserves in the Conroe field.

"4. Humble's cost of producing oil in Conroe field 1945 through 1950, including lifting costs.

"5. A showing of the original cost, depreciation and present book value of:

"a. Humble's gasoline plant in the Conroe Field and related facilities.

"b. Humble's production equipment in the Conroe field.

"c. Humble's Conroe campsite.

"6. Inventory of Humble's oil in storage in Montgomery County January 1, 1950.

"7. Humble's files and records on purchase of mineral interest from Hill & Hill in the Conroe Field.

"8. a. All of Humble's electric logs in the Conroe Field.

"b. All of Humble's core records of wells in the Conroe Field.

"c. All of Humble's cross sections of the Conroe Field, if any, prepared after May, 1948.

"9. All data showing the physical characteristics of the Conroe Field with respect to sand thickness, porosity and permeability.

"10. All written data pertaining to:

"a. Water-oil contact.

"b. Gas-oil contact in the Conroe Field including the original water-oil contact and gas-oil contact.

"11. A list of the instruments by which Humble Oil & Refining Company acquired the mineral interests which it owned on January 1, 1950 in the Conroe Field, with references to the places in the records of Montgomery County, Texas, in which such instruments are recorded."

The Vice President and General Counsel of Humble, Mr. Rex Baker, at first demurred to this demand by the Attorney General and his representative, but after the Attorney General's representative, Mr. Charles D. Matthews, the First Assistant Attorney General, notified Mr. Baker that if the demand to examine and make copies of the Company's books and records were

not acceded to the Attorney General would file quo warranto proceedings against the Humble Oil & Refining Company to forfeit its charter. The Humble and its officers thereupon permitted Mr. Matthews and his associates to examine their books and records and make copies, under protest however, and with notice to them that they were doing so only under protest and that they reserved the right to resist the use of such data, information, and copies on the trial of the lawsuit.

Thereafter the petition in the present action was filed in the nature of an ancillary proceeding to the main tax suit, alleging in greater detail the above matters and also alleging that the records examined and copies taken by the Attorney General were Humble's private property, that they were valuable records and constituted their stock in trade and were confidential in nature. The petition further alleged that the main tax case then pending in San Jacinto County involved neither any criminal charge against Humble, nor a charge that Humble was violating any of its charter rights or privileges and that in making the visitation demand on Humble no contention was made by the Attorney General that the examination was for the purpose of investigating a criminal offense or of ascertaining whether Humble was violating any of its charter rights or privileges; it was further alleged that such visitation and demand by the Attorney General was for the sole purpose of obtaining evidence to be used against Humble in the tax suit pending between Montgomery County, its officers, and the State of Texas on the one hand, and Humble Oil & Refining Company on the other. It was also alleged that the records were obtained from Humble under duress and threats of charter forfeiture and that the acts of the Attorney General constituted an unreasonable search and seizure and a denial to the appellant Humble Company of due process of law and equal protection of law under both the constitution of the United States and the constitution of the State of Texas. It was also alleged that such a visitation and search of the records and making copies thereof by the Attorney General for the use by the State as evidence in the tax

suit was contrary to the legislative authority granted to the Attorney General. The petition prayed that final decree be entered "(a) declaring the rights of the plaintiff Humble Company to refuse visitation by the Attorney General, his assistants, representatives and agents, and the copying of its records for use for the pending cause in San Jacinto County without incurring the penalty of forfeiture of its charter under Article 1370, R.C.S. of Texas of 1925. (b) Declaring the right of plaintiff to the return to its sole and exclusive possession of all documents and copies thereof unlawfully taken from its possession under duress to seek forfeiture of its charter; and in event of a declaration of its right to such possession, a decree for the return thereof."

The original answer by the defendant Price Daniel contained numerous special exceptions, the purport of which was that the Attorney General had acted within his statutory authority in examining the records of the Humble Company, making copies thereof, under the circumstances and for the purposes as stated in the letter of visitation. The answer also contains a general denial and alleged in more detail all of the incidents alleged by the Humble Company in its petition relating to the visitation and search and copying of Humble's records by the Attorney General, his agents and representatives. The only noticeable fact alleged in this answer which was not alleged by the Humble Company in its petition is the allegation that on October 9, 1952 Assistant Attorney General Charles D. Matthews, in charge of investigation of the files and records of Humble, stated to Mr. Rex Baker, Vice President and General Counsel of Humble that "even though the supplement to the Attorney General's letter of request (the visitation request) dated October 7, 1952 did not so state, there were questions in the minds of the Attorney General and his assistants as to possible law violations in connection with the taxation of Humble's mineral properties in the Conroe Oil Field." The answer further plead estoppel and alleged that the Humble Company and its officers and officials by their action in granting the right to examine and

copy from the records of Humble in the manner alleged in the answer were estopped to bring this suit against the Attorney General.

The trial court issued an order in chambers restraining the Attorney General from making further demands of visitation, or copying records to be used in the tax suit, and impounding in the registry of the court all records copied as a result of the visitation complained of. All of such orders were to remain in effect until the hearing on the application for temporary injunction.

A hearing was had on the temporary injunction and all exceptions and other dilatory pleas were overruled. Evidence was received by the court and by agreement of the parties the hearing was considered for all purposes as a hearing and trial on the merits of Humble's suit for a declaratory judgment. The court entered judgment dissolving the restraining order theretofore issued, denying the temporary injunction sued for and declaring the law to be that "the defendant Price Daniel, Attorney General of Texas, was acting within the scope of his lawful powers in making the various demands for inspection and copying of the records of the plaintiff corporation for use in the tax suit now pending on the docket of this court and hereinabove referred to, and the court does, therefore, so declare the law, and relief to plaintiff on its prayer for declaratory judgment is in all things denied."

At the request of the appellant Humble Company the trial court filed findings of fact and conclusions of law which were as follows:

## "Finding No. 1

"At the time of filing this suit there was, and had been for many months, and there is now, pending on the docket of this court a suit styled: Humble Oil & Refining Company vs. Montgomery County, Texas, et al, and numbered 4,787, which suit was originally filed in the Special District Court of Montgomery County, for the Ninth Judicial District of Texas, and was numbered thereon, 19,695. Said cause was, on application for change of venue, filed by plaintiff, transferred to this court and this county for trial.

## "Finding No. 2

"In the suit referred to in Finding No. 1, plaintiff seeks injunctive relief, to prevent the enforcement of certain tax assessments and the collection thereof for the year 1950, on the averment that said assessments are void and invalid. Though not an original party to said suit, the State of Texas, acting through her duly elected, qualified and acting Attorney General, Price Daniel, became a voluntary party, by filing therein a petition in intervention, and the Court aligned the State as a party defendant therein.

## "Finding No. 3

"The aforementioned suit has heretofore been set for trial, by this court, for November 2, 1952, and, on or about October 7, 1952, the defendant herein, Price Daniel, purporting to act in his official capacity as Attorney General of Texas, and in behalf of the State of Texas, delivered to plaintiff herein a written demand for inspection of plaintiff corporation's books and records, and through his duly appointed, qualified and acting agent and representative demanded of plaintiff copies of such books and records, specifically stating what records he desired copies of; the copies demanded being as follows:

\*    \*    \*    \*    \*    \*

"(This list is copied in the statement above and is omitted here).

## "Finding No. 4

"The demand for inspection of plaintiff's books and records, referred to in Finding No. 3, was not made by defendant for the purpose of investigation into the organization, conduct and management of plaintiff corporation; but was made solely for the purpose of ascertaining if plaintiff's files, books and records contained any evidence or information of value to the defendants in the tax suit referred to in Finding No. 1, above, and to obtain access to such evidence and information, if any, and to render such evidence and information available to said defendants if evidence or information of value were found.

## "Finding No. 5

"The inspection and examination of plaintiff's files, books and records which followed such demand was made for the sole purpose of obtaining information and evidence for use by the State in the trial of the tax suit, aforesaid.

## "Finding No. 6

"Defendant, Price Daniel, did not demand or take the copies of the records listed in Finding No. 3, because, in his judgment, or in the judgment of any of his agents, assistants or representatives such copies showed or tended to show that plaintiff corporation has been or is now engaged in acts or conduct in violation of its charter rights and privileges, or in violation of any law of this State; but such copies were demanded and taken, solely for the purpose of using the same as evidence in the pending tax suit, and, for use in making further investigation as the basis of acquiring additional information for use in the tax suit aforesaid.

## "Finding No. 7

"All demands of whatever nature made by defendant, his assistants, agents and representatives, subsequent to the demand of October 7, 1952, were, in truth and in fact, made by them for the purpose of aiding, assisting and supporting the Attorney General in preparing his case for trial in Cause No. 4787 styled Humble Oil & Refining Company, et al vs. Montgomery County, et al, now pending on the docket of this Court.

## "Finding No. 8

"No issue is raised in the tax suit against Montgomery County which would involve plaintiff corporation in a violation of any criminal law of this state; nor is any issue raised involving plaintiff corporation in a violation of any of its charter rights and privileges. On the contrary said cause involves only issues relating to civil relief to which plaintiff corporation contends that it is entitled, under the Constitution and laws of Texas and the United States.

## "Finding No. 9

"Plaintiff corporation, through its duly constituted authority, registered with de-fendant its objection to both the demand for inspection of its books and records and the demand for the copies of its records listed in Finding No. 3; whereupon defendant, through his first assistant, thereunto duly authorized, threatened to file a proceeding against plaintiff corporation seeking a forfeiture of plaintiff's charter, under the provisions of and by authority granted in Article 1370, R.C.S. of Texas, unless both the demand for inspection and copying of plaintiff's records were acceded to.

## "Finding No. 10

"Such threat referred to in Finding No. 9 involved such drastic penalties as to break down the will of plaintiff's officers to resist such demands so made, and deprived such officers of the right to exercise their own free judgment on the matter of refusing to comply with the demands. In short, plaintiff's officers were led to believe, and in the court's opinion did believe, that if they failed to comply with defendant's demands and through fear of the consequences if they were wrong in their belief that they could lawfully refuse to comply therewith, permitted the Attorney General to impose his will upon them, in lieu of exercising their own free judgment.

## "Finding No. 11

"Under fear, as a result of the threat referred to in Findings Nos. 9 and 10 above, the officers of plaintiff corporation permitted the inspection of its books and records demanded by the Attorney General in his letter of October 7, 1952, and the Attorney General's representative was given access to all of plaintiff's books and records as demanded.

## "Finding No. 12

"Under such fear, as a result of the threats theretofore made, the officers of plaintiff corporation permitted the copying of the records listed in Finding No. 3, and delivered such copies to the defendant through his representative duly appointed for that purpose; plaintiff's officers at the time of such inspection and at the time of delivering such copies stating to defendant's representative and to defendant himself, that compliance with such demands

was under duress and compulsion and with the right reserved of seeking redress through the Courts of this State.

## "Finding No. 13

"I find that defendant did intend to bring *quo warranto* proceedings, seeking forfeiture of plaintiff's charter if plaintiff's officers refused to comply with defendant's demands; and I further find that plaintiff's officers believed, in good faith, that such action would be taken, otherwise they would have refused to comply with such demand.

## "Finding No. 14

"I find that the facts herein found by me gave rise to a bona fide justiciable controversy, and I find this controversy to be in substance as stated in paragraph 'Fifteenth' of plaintiff's original petition filed herein, and that this controversy is so related to and so directly affects the subject matter of the main suit that it is necessary and proper that it be adjudicated in a proceeding ancillary to said main suit, and that final judgment from which appeal can be perfected be entered in said proceeding.

## "Finding No. 15

"I find that the issues involved in this controversy could not sufficiently or properly be tried and decided in the course of the trial of the main suit.

## "Finding No. 16

"I find that the plaintiff and its officers and agents made no representations to or agreements with the defendant or his agents which caused the defendant, his agents and representatives to change their position in any material respect.

## "Finding No. 17

"I further find that the penalty of charter forfeiture is so drastic and severe that it prevented plaintiff's officers from exercising their own free will, and prevented them from assuming the burden of refusing compliance with defendant's demands, without first appealing to the courts to declare and define its rights, as well as the rights of the Attorney General under Articles 1366–71, R.C.S. of Texas, 1925.

## "Finding No. 18

"I find that it would be inequitable and unjust for plaintiff to be required to assume the burden of suffering the possibility of charter forfeiture if its officers be wrong in their belief that they are not required to comply with demands made by defendants under the facts here stated and by me found. In this connection, I find that plaintiff's officers are in good faith in their bona fide belief that the defendant's demands are unauthorized by statute and in excess of defendant's lawful authority.

## "Finding No. 19

"The records of which copies were demanded from plaintiff and received by defendant as well as the copies themselves are valuable records, constitute, in part, plaintiff's stock in trade, are confidential in nature and are, in truth and in fact valuable property, title to which is vested in plaintiff alone.

## "Conclusions of Law

## "Conclusion No. 1

"From the above, I conclude that the Attorney General of Texas was acting, at all times, within the powers granted him by law, in demanding the right to inspect and copy the books, records and documents of plaintiff corporation.

## "Conclusion No. 2

"The Attorney General having acted within the scope of his lawful powers, the restraining order should be dissolved, the temporary injunction denied, and declaratory judgment entered in accordance with my determination of the law as herein set forth.

"/s/ Ernest Coker
"Judge Presiding"

The Attorney General, defendant in the trial court, filed exceptions to the Findings of Fact and filed a request for amended Findings of Fact and Conclusions of Law, which was refused by the court.

The appellant Humble Company at first perfected its appeal by excepting only to the judgment on the ground that the findings of the court do not support the judg-

ment and perfected its appeal under Rule 307, Texas Rules of Civil Procedure, by filing a transcript only, without a statement of facts. After a vigorous flank attack by the appellee in his brief on this procedure, the appellant, with the approval of the court, filed a statement of facts. The appellee thereafter caused a supplementary statement of facts to be filed, which included the pleadings of the parties in the main tax suit pending in the district court of San Jacinto County. This supplementary statement of facts showed that defendants Montgomery County et al., have filed an amended answer and have also filed their cross action, praying for judgment therein for the total amount of 1950 taxes remaining unpaid by Humble Company, together with penalties, interest and costs, and foreclosure of the tax liens of the cross defendant.

Montgomery County has filed an amicus curiae brief in support of the trial court's judgment. This brief is largely devoted to a discussion of the action of the trial court in failing to sustain the Attorney General's plea in abatement and the various related special exceptions. The plea in abatement was directed to what was termed the impropriety of the action for a declaratory judgment under the circumstances and upon the allegations of Humble Company in the present ancillary suit. The matters discussed in this brief will be considered and discussed together with the Attorney General's brief upon the same questions. It is apparent from the zeal and thoroughness of the briefer that Montgomery County is well satisfied with the trial court's judgment and welcomes the presence of the Attorney General in its suit against the Humble Company and to assist it in resisting the attacks made by Humble upon the proceedings and findings of its County Board of Equalization.

All parties have presented extensive and careful briefs upon the questions involved. We have the appellant's brief, the appellee's brief, the brief of amicus curiae, the appellant's reply brief and the appellee's response to the appellant's reply brief. The determination of this appeal we believe is thereby resolved into the determination of three principal questions:

(1) Is this ancillary suit for a declaratory judgment a proper subject for determination under the Uniform Declaratory Judgments Act?

(2) Do Articles 1366 to 1371, inclusive, Vernon's Civil Statutes, Annotated, known as the Visitorial statutes, violate Article 1, Section 9, of the Constitution of the State of Texas Vernon's Ann.St., and the 4th Amendment to the Constitution of the United States, prohibiting unreasonable searches and seizures so as to render them void?

(3) If the said Visitorial statutes are not unconstitutional and void, was the Attorney General acting within the powers granted him by said statutes in demanding the right to inspect and copy from the books, files and records of Humble Oil & Refining Company for the purpose of securing evidence to be used in the injunction and tax suit between Montgomery County and others and Humble Oil & Refining Company?

The visitation statutes of Texas, Articles 1366 to 1371, inclusive, are as follows:

"Article 1366. Examination

"Every corporation, domestic or foreign, doing business in Texas, shall permit the Attorney General or any of his authorized assistants or representatives, to make examination of all the books, accounts, records, minutes, letters, memoranda, documents, checks, vouchers, telegrams, constitution and by-laws, and other records of said corporation as often as he may deem necessary.

"Art. 1367. Request to examine

"A written request shall be made to the president or other officer of said corporation at the time the Attorney General or his assistants desire to examine the business of said corporation. It shall be the duty of the officer or agent of any corporation to whom said request is presented to immediately permit the Attorney General, or his authorized assistant or representative to inspect and examine all the said books,

records and other documents of said corporation.

"Art. 1368. Authority to examine

"The Attorney General, or any of his assistants or representatives when authorized by the Attorney General, has the power and authority to make investigation into the organization, conduct and management of any corporation authorized to do business within this State, and has authority to inspect and examine any of its said books, records and other documents, and take such copies thereof as in his judgment may show or tend to show that said corporation has been or is engaged in acts or conduct in violation of its charter rights and privileges, or in violation of any law of this State.

"Art. 1369. Disclosures

"The Attorney General, or his authorized assistants or representatives shall not make public, or use said copies or any information derived in the course of said examination of said records or documents, except in the course of some judicial proceedings in which the State is a party, or in a suit by the State to cancel the permit or forfeit the charter of such corporation, or to collect penalties for a violation of the laws of this State, or for information of any officer of this State charged with the enforcement of its laws.

"Art. 1370. Penalty

"Any foreign corporation doing business in Texas under a permit granted under the laws of this State, or any officer or agent thereof, or any domestic corporation which shall fail or refuse to permit the Attorney General, or his authorized representative or representatives, to examine or take copies of any of its said books, records, and other documents whether same be situated within this or any other State within the United States, shall thereby forfeit its right to do business in this State; and its permit or charter shall be canceled or forfeited.

"Art. 1371. Provisions cumulative

"The provisions of this chapter shall be cumulative of all other laws now in force in this State, and shall not be construed as repealing any other means afforded by law for securing testimony or inquiring into the charter rights and privileges of corporations."

We believe that the present controversy is a proper one for determination under the Uniform Declaratory Judgments Act. Article 2524-1, Vernon's Texas Annotated Civil Statutes. It is a justiciable controversy in that the appellant Humble contends that the Attorney General unlawfully took copies of its records, books and files and the appellee, the Attorney General of Texas, contends that his actions in so doing were in conformity with the provisions of these statutes. The question of the validity of the visitorial statutes and the authority of the Attorney General to act as he did herein thereunder, we believe, is properly raised by the appellant Humble's suit for a declaratory judgment. In its suit the appellant is not seeking an adjudication of the question of admissibility in evidence of the documents and copies which the Attorney General took from Humble. Rather, as it contends in its brief, Humble seeks an adjudication of the Attorney General's right to inspect and make copies of its records, and Humble's right to refuse such demand if improperly made under the circumstances without incurring the penalty of forfeiture of its charter. The Uniform Declaratory Judgments Act is still comparatively new in Texas, since it was enacted in 1934. The Act is written in broad and general terms and contains the express provision that it is to be liberally construed and administered. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837. It appears to be an appropriate procedure by which the parties may have the courts determine the validity and construction of a statute. It has been held that unless legislation has provided an exclusive remedy of another kind an action for a declaratory judgment is an alternative remedy. It may be used to determine the powers and duties of a trustee, as an alternative to the traditional remedy in equity. Arterbury v. U. S. National Bank, Tex. Civ.App., 194 S.W.2d 803. It has been used to determine whether certain statutes authorize the Railroad Commission to follow certain procedure in taking evidence from the books and records of a public utility

corporation in a rate controversy. Railroad Commission v. Houston Natural Gas Corporation, Tex.Civ.App., 186 S.W.2d 117. We therefore believe that the trial court did not err in overruling the appellee's plea in abatement, thereby holding that a declaratory judgment action in this case did lie.

We believe that the visitorial statutes, Articles 1366–1371, inclusive, which are quoted above, are not in violation of the constitutional inhibitions against unreasonable searches and seizures. The State, by its authorized officers, has the undoubted right to require full information as to all of the business of a private corporation created by it or which it has permitted to come into the State, for the State has the right to know what its creature or one of another sovereignty which it permits to come into the State is doing. This is recognized by the appellee, who states in his brief that he does not dispute the proposition that corporations are protected against unreasonable searches and seizures. The appellee's position is that, as against the creating state when it exercises full visitorial powers, an infinitely greater search and seizure of corporate records is reasonable than would be reasonable in regard to the records of natural persons. The appellant contends that if the visitorial statutes confer upon the Attorney General the power to copy from its records information for use in the tax and injunction suit now pending between Humble and Montgomery County, then such statutes would attempt to grant a power of search and seizure which is unreasonable even against a corporation created by the State making the seizure. We agree with this proposition by the appellant, but we do not believe that the statutes themselves have the effect of granting to the Attorney General the unlimited and unrestricted right to examine and copy from the records information to be used in ordinary litigation such as a tax suit. In the various Articles of the statute it is noted that they relate to different powers and duties. Articles 1366 and 1367 require every corporation to permit the Attorney General or any of his assistants or representatives to make examination of the records of the corporation as often as he may deem necessary immediately after presentation of a letter of request for such examination. From the background of this legislation we believe that these two Articles properly grant to the Attorney General the full and unlimited and unrestricted right to examination of the corporation's books and records at any time and as often as he may deem necessary. A similar unrestricted and unlimited authority is not granted the Attorney General, however, by Article 1368 in granting the right and authority to make copies of the books and records of the corporation examined. By the express words of Article 1368, the Attorney General or his assistants or representatives has the right and authority to take such copies of the corporation's records as in his judgment may show or tend to show that said corporation has been or is engaged in acts or conduct in violation of its charter rights and privileges or in violation of any law of this State. This is a limitation upon the Attorney General's authority to make copies of a corporation's books and records for use in litigation. Article 1369 places a further limitation upon the uses which can be made by the Attorney General, his assistants or representatives, of the copies of the records of any information which he had received by that examination. The effect of such limitations upon the authority of the Attorney General is sufficient to make certain that only reasonable searches and seizures of the corporation's books and records can be made by the Attorney General under the statutes and such statutes are therefore not unconstitutional and void. To what degree the authority of the Attorney General to make copies is limited will be discussed in the third section of this opinion.

We believe that the visitorial statutes quoted above give to the Attorney General an unlimited and unrestricted right of visitation and examination of the books and records of the corporation. As we have held above, we believe that such a right is a necessary right and authority which is reserved to a state which creates a corporation or permits it to do business within its borders. We believe, however, that the wording of the statute and the

background which produced the legislation in question undoubtedly shows the legislative intent to be that the right of copying and seizing from the records is limited to the use of copies of such records to be used as evidence in suits involving the violation of the corporation's charter rights and privileges, or violations of the regulatory provisions of some statute enacted for the purpose of controlling and regulating such corporations or violations of some penal statute.

Section 22 of Article 4 of the Constitution of Texas, in its pertinent parts, reads as follows: "The Attorney General * * * shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and, from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage, not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law. * * *" It is apparent from the constitutional grant of power to the Attorney General and from the visitation statute itself that the purpose for which the Attorney General is given this power of investigation was to enable him to investigate corporate acts in excess of the charter powers of corporations and acts in violation of the law. We believe that in the present instance the Attorney General had the right, by proper demand and letter, to make an unlimited and unrestricted examination of appellant Humble Company's books and records, but we also believe that the Attorney General was without authority to make copies and seizures of any records of the Humble Company to be used in evidence in behalf of Montgomery County and the State in a pending injunction and tax litigation between them. Article 1371

itself, in providing and reciting that the provisions of the entire chapter relating to the powers of visitation shall not be construed as repealing any other means afforded by law for securing testimony or inquiring into the charter rights of corporations, indicates that the Attorney General's powers thereunder are not unlimited.

There is no authority in Texas directly in point on this controversy. The right of unlimited visitation and seizure of copies of books and records of the corporation by the Attorney General under our visitorial statute has never been the subject of litigation in the appellate courts of this State since the enactment of the statutes themselves in 1907. The Supreme Court of Oklahoma in Gilmer Oil Co. v. Ross, 178 Okl. 125, 62 P.2d 76, 78, passed on a similar question. Section 28, Article 2, of the Oklahoma Constitution provides: "The records, books, and files of all corporations shall be, at all times, liable and subject to the full visitorial and inquisitorial powers of the State, notwithstanding the immunities and privileges of this Bill of Rights secured to the persons, inhabitants, and citizens thereof."

Section 136 of the 1931 Code of Oklahoma Statutes, 18 O.S.A. § 458, provides: "It is hereby made the duty of every foreign corporation doing business in the State of Oklahoma, in any action pending in any court of record within the State, wherein the State of Oklahoma or any of its officers in their official capacity are parties, upon the application of the State or said officers, and upon the order of the presiding judge of said court, authority for which is hereby conferred, upon reasonable notice, at a time and place within the State to be fixed by said court, to cause to appear for examination and inspection any of its officers, agents, books and papers." In that case the State had filed an action against a corporation to assess the property of the corporation for ad valorem taxes, which, it was alleged, were omitted from the company's tax renditions. The State, relying upon the above provisions of the State's constitution and statutes, demanded the right to examine and make copies of the records of the corporation. The Supreme Court of Okla-

homa held as follows: "We do not doubt the constitutionality of section 136, supra, but we agree with petitioner that the provisions of the section cannot be applied in an action of this character. This conclusion is reached * * * upon the premise that the Legislature intended the statute to apply only in proceedings arising under the state's visitorial and inquisitional powers in connection with the internal management and control of foreign corporations doing business here.

\* \* \* \* \* \*

"The right of visitation as defined by the Supreme Court in Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 8, 50 L.Ed. 130, 4 Ann.Cas. 433, is, 'A public right, existing in the state for the purpose of examining into the conduct of the corporation with a view of keeping it within its legal powers.' And it has been said that the purpose of visitation is to supervise, direct, and control the management of the corporation. 14A C.J. 341, § 2198.

"A tax ferret proceeding to assess omitted property for ad valorem taxation could not fall within the foregoing definitions of visitorial power. Such proceeding is clearly not one wherein that power may be invoked. Failure of the corporation to return its property for ad valorem taxation does not constitute an overstepping of the bounds of its legal powers, nor is it a violation of any law to which it is intended for its legal existence or right to do business here. Its duty to pay ad valorem taxes is common to all citizens of the state and is not a subject of internal management within the meaning of that term as used in the definition of visitorial powers. The state's remedy in such case and its method of procedure are the same as in cases against any taxpayer."

■ We think that reasoning and holding should apply in the present case. When the State of Texas intervened in the tax litigation in Montgomery County it did so as a private litigant. The visitorial powers of the Attorney General were not available to the State in such a lawsuit. It was under the duty to try its case in the same manner and under the same rules by which any other litigant is compelled to sue and be sued.

We therefore hold that the records and copies of records obtained by the Attorney General from Humble were obtained without proper authority in law. They are the rightful property of the appellant Humble Company and should be restored to their rightful owner.

The judgment of the trial court is reversed and judgment is here rendered, declaring that the Attorney General was acting within the scope of his lawful powers in making the demand for inspection and making the inspection of the records, books and files of the appellant Humble Oil & Refining Company, but that the Attorney General was acting beyond the scope of his lawful powers in taking copies of such books, records and files for use in the tax suit now pending in the District Court in San Jacinto County, No. 4787 on the docket of said court.