the affidavit above referred to that the will was attacked on the ground of the want of testamentary capacity of the testator. The court directed a verdict for the plaintiff, thus adjudging that there was not enough evidence to go to the jury upon the issue raised by the defendants, or, in other words, that their case is without merit. There was nothing to submit to the jury. Under such a simple state of facts we are not able to perceive why a defendant with an unmeritorious case, the proof in which was utterly insufficient to disturb a decree of probate of a will, should be rewarded for making an unsuccessful contest. The estate should not be depleted where there is a failure to sustain an attack upon a will admitted to probate.

We are therefore of the opinion that the order appealed from should be reversed, with $10 costs and disbursements. All concur.

---

PEOPLE ex rel. LORGE v. CONSOLIDATED NAT. BANK.

(Supreme Court, Appellate Division, First Department.  June 9, 1905.)

1. BANKS—LIST OF SHAREHOLDERS—SHAREHOLDERS' RIGHT TO INSPECT—STATUTES.

Rev. St. U. S. § 5210 [U. S. Comp. St. 1901, p. 3498], requires a national bank to keep a list of shareholders, which shall be subject to the inspection of all shareholders during business hours. Corporation Law, Laws 1892, p. 1831, c. 688, § 29, requires stock corporations to keep a stockbook, which shall be open to the inspection of stockholders, who may make extracts therefrom. Banking Act Aug. 13, 1888, c. 866, § 4, 25 Stat. 436 [U. S. Comp. St. 1901, p. 514], provides that national banking associations shall be deemed citizens of the state within which they are located. *Held*, that a shareholder of a national bank located in the city of New York was entitled to examine its list of shareholders, and to make extracts therefrom for the purpose of negotiating for the purchase of stock.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of Joseph W. Lorge, to compel the Consolidated National Bank to permit relator to examine its list of stockholders, and from an order denying the motion for peremptory writ relator appeals. Reversed.

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Herbert H. Mass, for appellant.
Edward B. Hill, for respondent.

HATCH, J. The relator is a stockholder of the defendant bank, owning 10 shares of stock. After he became such owner, he applied to the bank for leave to make a copy of the list of stockholders of the bank. This request was refused by its officers. Thereafter he called at the bank during business hours, and asked to see the stockbook. The same was exhibited to him, and he commenced to make a copy of the list of stockholders, when the officers of the bank removed the book, and refused to permit him to make a copy or any memorandum therefrom. The relator contended that he had a

right so to do, and stated that, unless he were permitted to make a copy of the list of stockholders, he did not care to inspect the book. The relator admits that he is a dealer in stocks and bonds, and that he desired to obtain a list of the stockholders of the bank, in order that he might, for a legitimate purpose, negotiate for the purchase of stock; and denies that he intended to make use of the information for any purpose inimical to the interests of the bank. Upon this motion it was made to appear that since the demand for an inspection the relator had purchased 110 additional shares of stock of the bank. It is settled by authority that a right of inspection and examination of corporate books existed at common law; that the statute has not taken away such common-law right, but has amplified it. Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461. The distinction between the right at common law and the statutory right is that in the former case the power to compel an exercise of the right is discretionary, while in a case brought within the terms of the statute it is mandatory. Section 5210, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3498], provides that the president and cashier of every national bank shall at all times cause to be kept a full and correct list of the names and residences of all the shareholders of the association and the number of shares held by each in the office where its business is transacted. "Such list shall be subject to the inspection of all the shareholders and creditors of the association, and the officers authorized to assess taxes under state authority, during business hours of each day in which business may be legally transacted." A verified copy of such list is also required to be furnished to the Comptroller of the Currency. Pursuant to the provisions of section 29 of the stock corporation law (Laws 1892, p. 1831, c. 688) of the state of New York, every stock corporation is required to keep correct books of account of all of its business and transactions, and also a book to be known as the stockbook, which book shall be open daily during at least three business hours for the inspection of its stockholders and judgment creditors, who may make extracts therefrom. Section 53 (page 1840) is made applicable to foreign corporations, and requires a stockbook to be kept in the same manner as for a domestic corporation, provides for the right of inspection, and requires the same to be kept open daily during business hours. It appears, therefore, that by both federal and state statutes the corporation is bound to keep its stockbook open for the inspection of its shareholders. It is said, however, that the state statute does not apply to the defendant because it is a foreign corporation. The contrary was held in Tuttle v. Iron Nat. Bank, 170 N. Y. 9, 62 N. E. 761. The court in that case referred to Banking Act, Aug. 13, 1888, c. 866, § 4, 25 Stat. 436 [U. S. Comp. St. 1901, p. 514], under which the defendant was organized, as authority therefor. Therein it is provided that national banking associations are "to be deemed citizens of the states in which they are respectively located; and in such cases the Circuit and District Courts shall not have jurisdiction, other than such as they would have in cases between individual citizens of the same states." Authority is cited to show that the courts of this state have uniformly held that

they have jurisdiction in actions against national banks, and have exercised the same in due course. These authorities establish that the relator had the right of inspection of the stockbook at a proper time and place. The right of inspection thus given is to inform the shareholder of the facts appearing in the book, so that he may act thereon. He is entitled to all of the information disclosed by the book. It is not to be presumed that he can carry in his memory all of its contents, and, as the inspection is granted for the purpose of informing him concerning the matter, he has the right to make such copies and memoranda as will make the inspection effectual not only by conveying to his mind the contents of the book, but also by enabling him to retain the same in such form that he may act thereon for any legitimate purpose. The right of inspection, therefore, carries with it the right to make such extracts from the book as will enable the shareholder to retain the information disclosed by the inspector. Doubtless the court has power to withhold an inspection for an illegitimate purpose, and may regulate the time when the inspection shall be made. But where it is sought for a legitimate purpose, and the application is made during business hours, the right to such inspection is mandatory. The relator had the right to purchase the stock of the bank on such terms as might be agreed upon between the owner and himself, and he had the right to resort to the stockbook for the purpose of acquiring knowledge as to who were its stockholders, and to preserve such information in permanent form by making a copy of the names. As is disclosed by the record, this was his object in making a demand for inspection and taking memoranda therefrom. This was within his clear legal right to do, and, as this right has been denied, it follows that the order should be reversed, with $10 costs and disbursements, and a motion for a peremptory writ of mandamus granted, with $10 costs. All concur.

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.