THE STATE OF CONNECTICUT EX REL. ALFRED F. COSTELO *vs.* THE MIDDLESEX BANKING COMPANY.

First Judicial District, Hartford, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A stockholder has the right, at common law, to inspect the books and records of the corporation at reasonable times and for proper purposes.

With respect to the stock ledger or other books which disclose the ownership of shares, chapter 215 of the Public Acts of 1911 has enlarged and made absolute this qualified common-law right of inspection, and the stockholder is no longer obliged to first show a satisfactory reason and proper purpose for seeking the desired information.

Although a writ of mandamus to compel such an inspection is not demandable as a matter of absolute right, its issue will not be refused, in the exercise of a reasonable judicial discretion, merely because the information is sought for use in the applicant's own business of a stockbroker and trader, or to sell to other stockbrokers throughout the country as a list of possible investors.

Argued October 8th—decided November 8th, 1913.

ALTERNATIVE WRIT OF MANDAMUS requiring the respondent to allow the relator, one of its stockholders, to inspect its stock books for the purpose of obtaining the names and addresses of its stockholders, or to show cause to the contrary, brought to and tried by the Superior Court in Hartford County, *Holcomb, J.*, upon

demurrer to the respondent's return; the court sustained the demurrer and rendered judgment in favor of the relator, from which the respondent appealed. *No error.*

The pleadings show that the relator is a stockholder of the defendant corporation, that he has made demands to be permitted to examine its books for the purpose of obtaining the names and addresses of its stockholders and the number of shares held by each, and that these demands have been refused. The return sets up matters affecting the relator's motive and purpose in making these demands, as furnishing a sufficient reason why the peremptory writ asked for should not issue. These matters stand admitted by the demurrer. The allegations in substance are that the relator has no interest in the corporation or in its stockholders as a bona fide investor; that his only interest therein is that of a broker and trader; that he acquired his stock not for purposes of investment as a bona fide stockholder but as a broker merely and for the speculative purpose of trading therein for profit; that he does not seek the information desired for the protection of any interest he has as a stockholder or for any purpose germane to such interest; that he seeks it solely that he may be enabled to trade in the shares of the corporation for his own personal profit and at its expense; and that the information sought has a commercial value as an investment list and is salable to be sent broadcast over the country, a use detrimental to the corporation and to its stockholders.

*Frank D. Haines,* for the appellant (respondent).

*William C. Hungerford,* for the appellee (relator).

PRENTICE, C. J. The right of inspection of the books and records of a corporation at reasonable times and for proper purposes is a common-law privilege incident to

the ownership of shares in a corporation. *Guthrie* v. *Harkness*, 199 U. S. 148, 26 Sup. Ct. Rep. 4; *Matter of Steinway*, 159 N. Y. 250, 258, 53 N. E. 1103; 4 Thompson on Corporations, § 4515. This common-law right is a qualified and not an absolute one. It is qualified by the condition, among others, that the purpose of the stockholder desiring to make the examination is germane to his interest as such stockholder, proper and lawful in its character, and not inimical to the interests of the corporation itself. *Guthrie* v. *Harkness*, 199 U. S. 148, 156, 26 Sup. Ct. Rep. 4; *Varney* v. *Baker*, 194 Mass. 239, 241, 80 N. E. 524; *Heminway* v. *Heminway*, 58 Conn. 443, 445, 19 Atl. 766. Courts will not enforce its recognition under other conditions. They will do so only when the desired examination would be reasonable and in the interests of essential justice. It is incumbent upon the party desiring the examination to show the existence of these conditions, else judicial aid will be denied him. *Bruning* v. *Hoboken Printing & Pub. Co.*, 67 N. J. L. 119, 50 Atl. 906; 4 Thompson on Corporations, § 4540.

This subject, however, is one with which legislation is competent to deal, and statutes have been repeatedly enacted either confirming or enlarging the common-law right. Our statute (chapter 215, § 1, of the Public Acts of 1911 *) is such a statute. Unlike the common-

---

* At least three days before every stockholders' meeting, a complete list of the stockholders entitled to vote, arranged in alphabetical order, shall be prepared by the secretary, and such list shall be open to inspection by any stockholder at the time and place of the meeting. Any such secretary who neglects or refuses to produce such list at any meeting or refuses to permit an inspection thereof by any stockholder entitled to vote shall be ineligible for election to any office in such corporation for one year thereafter. The stock ledger, if there be one, otherwise the transfer books of the corporation, shall be *prima facie* evidence as to who are stockholders. The original or duplicate books of any corporation in which the transfers of stock shall be registered, and the original or duplicate books containing the names and addresses of the stockholders

law rule it is confined to a limited class of corporate books and records, to wit: those which disclose stock ownership, and does not embrace within its provisions books and records generally. The rule laid down with respect to this limited class is unqualified in its terms save as to the time and place of examination. It is broadly provided that the designated books shall be open to the examination of every stockholder. Beyond question here is an enlargement of the common-law right as respects these particular books. The right, which at common law is qualified, is by the statute made absolute. It manifestly was the legislative intent, and the language of the statute is apt for the effectuation of that intent, that a stockholder seeking information afforded by the stock books should be relieved of the burden of first showing a satisfactory reason and proper purpose, and that it be sufficient for him to show that he is a stockholder. The history of this statute, succeeding as it did one which had long been in existence requiring the name, residence, and number of shares of stockholders of corporations to be spread upon the public records in the office of town clerks, and the strict requirements contained in the first part of the section under review touching the general subject of publicity to stockholders of stock ownership, leave no room for doubt upon this point. General Statutes (1902) § 3344; Rev. 1875, p. 280, § 17.

It is urged that the statute is merely confirmatory of the common law, and the case of *O'Hara* v. *National Biscuit Co.*, 69 N. J. L. 198, 54 Atl. 241, is cited in support of that proposition. Clearly that was not the

---

and the number of shares held by them, respectively, shall, at all times during the usual hours of business, be open to the examination of every stockholder at its principal office or place of business in this state, and such original or duplicate books shall be evidence in all courts of this state.

legislative intent, else why did the General Assembly select stock books for special treatment, while the right of inspection of all other books was left to be regulated by the common law. Why this waste of legislation? Prior to the revision of our corporation law, made in chapter 157 of the Public Acts of 1901 (p. 1334), there had been for a number of years upon our statute books provision governing the right of inspection of all the books of a corporation without distinction between them. General Statutes (1888) § 1953. In the revision this provision was omitted, and the right of inspection was left to be regulated by the common law except as to stock books concerning which the present regulation was made. § 21. It is impossible to believe that this action was taken unintelligently and without the definite purpose to put stock books upon a different plane from that occupied by the general books of a corporation.

But this conclusion as to the strict legal right of the relator is not of itself sufficient to entitle him to the judgment which he seeks in these mandamus proceedings. In such proceedings the writ is not issued as a matter of right, but in the exercise of a judicial discretion which takes into account other considerations than the legal right of the relator. *Chesebro* v. *Babcock*, 59 Conn. 213, 217, 22 Atl. 145; *Williams, State's Attorney,* v. *New Haven,* 68 Conn. 263, 271, 36 Atl. 61; *Union Pacific R. Co.* v. *Hall,* 91 U. S. 343, 356. "The writ of mandamus is not always demandable as an absolute right, and whether it shall be granted or not frequently rests in the discretion of the court. . . . The writ will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or

to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud. The relator must come into court with clean hands." *People ex rel. Wood* v. *Assessors of Brooklyn,* 137 N. Y. 201, 204, 33 N. E. 145. It will not be issued to accomplish a wrong or in aid of illegitimate or unlawful action. *People ex rel. Sherwood* v. *Board of Canvassers,* 129 N. Y. 360, 370, 29 N. E. 345; *People ex rel. Lorge* v. *Consolidated Nat. Bank,* 105 N. Y. App. Div. 409, 412, 94 N. Y. Supp. 173. It will not be issued where it will work an inequity to him against whom it is sought. *Chesebro* v. *Babcock,* 59 Conn. 213, 218, 22 Atl. 145; *Ansonia* v. *Studley, Judge,* 67 Conn. 170, 180, 34 Atl. 1030. The application must be made in good faith and not to serve an ulterior improper purpose. *Queen* v. *Liverpool, M. & N. Ry. Co.,* 21 L. J. Q. B. 284. The object of the writ is to promote ends which are consonant with right and justice.

The application of these principles by no means results in reducing the rights of stockholders under the statute in their practical exercise to the level of those secured by the common law. Their result is rather to impose certain limitations upon the power of parties to command the action of courts in aid of wrong and injustice, and to reserve to the courts a control over their proceedings in the enforcement of legal rights which shall comport with right and justice. A good illustration of the attitude of the courts in the enforcement of a technical legal right in the accomplishment of injustice is found in *Heminway* v. *Heminway,* 58 Conn. 443, 445, 19 Atl. 766. A statute, § 1953 of the Revision of 1888, then in force, provided in as positive terms as does that under consideration that all the statements and books of every corporation should be opened to the inspection of its stockholders. We, nevertheless, refused to sanction the use of the statute for purposes hostile to the corporation. *A fortiori,* should a court de-

cline its active aid by writ of mandamus on behalf of one seeking corporate information under similar conditions.

In the present case the trial court has never exercised its discretion. The writ was issued upon the strength of the relator's rights as a stockholder and the insufficiency of the return. If the demurrer to the return was properly sustained, it must have been for the reason that none of the matters set up in the return would justify a denial of the writ in the exercise of a reasonable discretion. Otherwise the demurrer should have been overruled.

There remains then to inquire whether the court, in the exercise of that measure of discretion with which it was endowed, would have been justified in denying the peremptory writ for any reason set out in the return.

The primary charge brought against the relator in the return centers about his business as a stockbroker. It is asserted that he ought not to be admitted to an examination of the stock books because he became a stockholder for the purpose of trading in its shares, and that his controlling purpose in seeking access to the stock books is that he, by means of the information obtained, may more effectually carry on that business and more extensively and successfully buy and sell the company's shares for profit to himself. We fail to discover what harm or loss can threaten either the company or its stockholders from the relator's operations as a buyer and seller of its stock, however active or general they might become, of so grave a character as to call for judicial protection from the exercise of the statutory right. Such operations are not hostile to the corporation, have nothing wrong, unjust, illegitimate or unlawful about them, and the desire to advance them in honorable ways, although ulterior to the interests of the corporation and stock ownership, has no taint of impropriety about it.

The only remaining charge made is that a list of the company's stockholders is sought by the relator because it has a commercial value, and can be sold as an investment list and sent broadcast over the country—a thing detrimental, it is said, to the corporation and to its stockholders. It is not asserted, it will be noted, that the relator purposes to make a sale in the manner recited of the information obtained by him. But assuming that the allegation is tantamount to such a charge, it is not easy then to discover how such sale, although an abuse of privilege and unworthy of reputable business men as it might be, could be detrimental to the interests of the corporation as such. To the stockholders the result might be annoyance from the receipt of alluring proposals to part with their money in ways which, if consented to, might prove to be permanent. How they could be otherwise affected detrimentally is not apparent. But whatever evil incidents might be expected to attend the policy of limited publicity enacted into the law, and assuming that the allegations conform to the fact, we must presume that the General Assembly took them into account and weighed them against the anticipated benefits in determining upon it. Whatever possibilities of evil may lie in the policy adopted, they are inherent in the system, and do not arise from exceptional cases of misuse or abuse. If we were to say that the right given by statute should not be enforced for the reason that harmful results might follow, we should be usurping the functions of the legislative department in making practical repeal of the statute and transgressing the comparatively narrow limits of proper judicial action already indicated.

There is no error.

In this opinion the other judges concurred.