**BUNDY, Plaintiff-Appellant, v ROBBINS & MYERS, INC., Defendant-Appellee.**

Ohio Appeals, Second District, Clark County.

No. 467.    Decided October 31st, 1947.

34

Keifer & Keifer, Springfield, for plaintiff-appellant.

Corry, Durfey & Martin, Springfield, for defendant-appellee.

## OPINION

By HORNBECK, J.

The appeal on questions of law and fact is from a judgment of the Common Pleas Court denying plaintiff injunctive relief and dismissing his petition.

The type of appeal enjoins upon us the obligation of consdering and deciding the issues between the parties anew and not as upon review as in an error proceeding.

Plaintiff in his amended petition alleges that he is the owner and holder of 300 shares of the common capital stock of the defendant; that on September 12, 1946, he made a request and demand upon the defendant to be allowed to inspect its books and records, particularly the list of shareholders and their addresses, with opportunity to make copies thereof; that the defendant has refused to permit inspection as requested. Plaintiff asserts that serious difficulties have arisen among the shareholders of defendant as to the management and policy of the company and certain financial matters and that the plaintiff desired an inspection and copy of the list of shareholders of the defendant in time to prepare for the annual meeting for the election of directors. The prayer is for injunctive relief and for penalty.

The answer admits the averments of the amended petition except so much thereof as asserts the difference of opinion among shareholders as to fiscal policy of the company and asserts that the plaintiff's cause is without equity; that he is

seeking to enforce the right of inspection of shareholders' list in order to solicit said shareholders in connection with the purchase and sale of stock of this defendant and other corporations, and to solicit the vote of shareholders for the election of the plaintiff to the Board of Directors of defendant in order that with the knowledge and confidential information to be acquired by him as a member of said Board, he may receive pecuniary gain and may be enabled to trade and deal in said stock to his own personal advantage; that plaintiff desires to promote a plan for the reorganization of defendant's capital structure in which plaintiff expects to participate as dealer or underwriter, * * * to his own personal advantage and contrary to the best interest of the defendant and, finally, that plaintiff's request is made for other and further unreasonable and improper motives and purposes. Reply is a general denial of the new matter set out in the answer.

Counsel, with meticulous care, have provided the court with extended briefs in which are presented and discussed not only germane Ohio authorities but references are freely made to texts on Corporations and to decisions from many of the other states of the Union.

No good purpose would be served by prolonging this opinion with a discussion of all of the cases cited outside of our own State, inasmuch as we have authority from our highest court which is clear and decisive of the law controlling on all but one of the material issues in the case. Upon the applicability of the decisions outside of Ohio, we could do no better than to quote from the opinion of Judge Kinkade in **The American Mortgage Company v Rosenbaum, 114 Oh St 239.**

"The issue involved in this case has been litigated in every state in the Union, in both state and federal courts. It is impossible to harmonize these decisions. Many of the early decisions have been later overruled by the same courts. Some are based on statutes; others not. It can not be said that the weight of authority supports either side of the question."

We will attempt to orient ourselves as to the controlling law in Ohio which may be readily done by reference to three cases cited and fully discussed by counsel for the parties and to the pertinent section of the Code, §8623-63 GC.

The cases are **The Cincinnati Volksblatt Company v Hoffmeister, 62 Oh St 189; The American Mortgage Co. v Rosenbaum, 114 Oh St 231; The William Cole Development Co. v Kennedy,** and seven other cases decided in the same opinion, **121 Oh St 582.** The statute in effect at the time the first two

cases were decided provided, insofar as applicable here, R. S. 3254 (the Hoffmeister case) and §8673 GC (the Rosenbaum case) "and the books and records of such corporation shall at all reasonable times be opened to the inspection of every stockholder." The statute under consideration in the Kennedy case, and applicable here, provides:

"The books of account, lists of shareholders, and their addresses, records of the issuance and transfer of shares, voting trust agreements, if any are filed, and the minutes of meetings of every corporation shall be opened to the inspection of every shareholder at all reasonable times save and except for unreasonable or improper purposes. (Emphasis added)

That part of §8623-63 GC underscored was first effective on July 23, 1929.

It will be observed, that in the statute as it existed at the time of the decisions in the Hoffmeister and Rosenbaum cases, the right of every stockholder to inspect the books and records of its corporation was unqualified and without limitation. Thus, when the court decided the Hoffmeister case, it stressed the absolute right of the stockholder to an examination of the records of the corporation. The 2nd syllabus, in part, held that:

"The right to inspect does not depend upon the motive or the purpose of the stockholder in demanding such inspection, * * * ."

In the Rosenbaum case, the question presented arose upon the sustaining of a demurrer to the allegations of the answer, which procedural step admitted the truth of said allegations. The answer in part, averred that the list which plaintiff desired to inspect was a trade secret because of the nature of the business of defendant; that the plaintiff did not desire the list in good faith but solely for the purpose of selling or disclosing said list to brokers in the city of Cincinnati, who would use it in competition with the defendant; that the demand of the plaintiff for an examination of its stockledger was made on the same day that the stock was transferred to him and that the purchase and transfer of the stock was for the sole purpose of enabling the plaintiff to demand the list under color of statutory right and that he was seeking to secure the list to obtain trade secret and confidential information concerning the company for improper and illegal purposes. The discus-

sion is predicated upon the well recognized principle of equity that a court has discretion as to the granting of injunctive relief; that the party seeking such relief must come into court with clean hands and held that the information to be furnished to the stockholder under the Code must be for his proper use in good faith as such stockholder. The court distinguished the Hoffmeister case, saying that the observation on the subject of motive was obiter. The syllabus of the Rosenbaum case is helpful because it has not been reversed or modified.

"One who acquires ownership of capital stock in a corporation, in order that he may thereby establish a right to inspect the books and papers of the company and take copies thereof, and then seeks to exercise such privilege not in good faith to inform himself, as a stockholder, with respect to the management and status of the affairs of the company, but with the intent of giving publicity to the information so to be acquired which will diminish the value of the assets of the corporation, embarrass the company in the conduct of its business and thereby cause a loss to all other stockholders of the company, is not entitled to a writ of injunction commanding the officers and agents of the corporation to permit such inspection and copies to be made."

The Hoffmeister case is dispositive of two questions presented here. The first syllabus—

"Injunction is the proper form of remedy to enforce the right of a stockholder in a private corporation, given by Section 3254 R. S., to inspect the books and records of the corporation."

and the 3rd syllabus—

"As incident to such right is the right to have such inspection by a proper agent, and **to take copies** from such books and records." (Emphasis added)

It is then established by the Rosenbaum case that the good faith of the stockholder seeking the benefit of the statute granting him the right to inspect the records of his corporation is an issue. The last case, Development Company, et al., v Kennedy, et al., supra, decided in 1930, gives application to that portion of the statute which qualifies the right of the shareholder to the inspection that "it shall not be for unreasonable

or improper purposes." The syllabus in the Kennedy case approves and follows the Rosenbaum case and holds further,

"A presumption of good faith and honesty of purpose attends a request by a stockholder for permission to inspect the books, records and property of a corporation, made pursuant to §8623-63 GC, until the contrary is made to appear by evidence produced by the officer or agent of the corporation objecting to the inspection."

So that, at this juncture, we may determine, first, that injunctive relief is the proper form of remedy to invoke if it appear that plaintiff is entitled to any relief. Second, that if plaintiff is entitled to inspect the books and records, he may make and take copies from them which would include a list of its stockholders. Third, that good faith and honesty of purpose is an essential to a request under the statute, but, fourth, upon such request a presumption of good faith and honesty of purpose arises which attends until the contrary is made to appear by evidence produced by the officer or agent of the corporation objecting to the inspection. This is amplified at page 587 of the opinion by Judge Kinkade wherein he says,

"The burden of proof on this question should not be borne by the stockholder, but should be borne by the agents or officers objecting to the inspection."

One further question arises, namely, whether or not the exception in the statute adds anything to the pronouncement of the Rosenbaum case that the inspection must be made in good faith. Upon this subject Judge Kinkade in the opinion of the Kennedy case at page 585, says:

"The Legislature has simply expressed in the amendment the rule as laid down by this court in the Rosenbaum case. We see no occasion to modify the decision in that case in any respect."

A supposititious case might be conceived in which the purpose of the stockholder making the request was not unreasonable but was not made in good faith. But it is doubtful if such a construction could be indulged in the face of the Kennedy decision. In any event, it is not necessary here to make any such nice distinction. If the question had not been decided in the Kennedy case, there would be ample authority

elsewhere to establish the law. As we have heretofore indicated, the provision of the section of the code is an exception to the unqualified right of the shareholder to the inspection, which reads "save and except for unreasonable or improper purposes." Thus, if the benefit of the exception is to be invoked by the defendant the burden is upon it to bring the case within the exception. Detwiler v Toledo St. Railway Co., 6 O. N. P. 485. An analogous principle is to be found in decisions on exceptions in criminal statutes, **Krusoczky v State, 108 Oh St 430,** and numerous cases therein cited.

It should further be observed that in all of the cases heretofore discussed the writers of the opinions emphasized the right of ownership in a corporation of a shareholder thereof. This is well stated by Judge Kinkade in the Kennedy case,

"There is not a shadow of doubt about who owns the property of every kind that is possessed by a body corporate. The real owners of all the net assets of any corporation are the stockholders. * * *

"Can anything be plainer than the fact that the owner of property has a clear right to inspect his own property? When the owner of property selects an agent or agents to care for and manage his property, how can any act be held to clothe the agent with power to manage the owner as well as to manage the property, and to prevent the owner from even looking at his own property except he do so pursuant to the rules and restrictions promulgated by the agent, who is wholly without power or authority to formulate any such rules or regulations."

The law controlling our decision is well defined. We then consider the factual development.

The plaintiff in September, 1944, purchased in his own name and for his own use 100 shares of the common stock of the defendant company. Some time later he purchased 200 shares. He is in the Investment Security business in St. Paul, Minnesota, operating under the corporate name of M. C. Bundy Co. Throughout the years from the acquisition of the first stock to the institution of this suit he has dealt with it as an individual and through his company. At the time he made the request under consideration here, he owned in his own name 300 shares of common stock and 700 shares in a street name. He testifies that in all he has sold the stock, both common and preferred to 36 purchasers, beginning in 1944, and that he has purchased 1700 shares of the common.

It appears that plaintiff made considerable investigation, both by correspondence and in person, of the company, its management, its corporate structure and the physical aspects of its Springfield plant. His claim, at all times, urged openly to the directors and officers of the corporation as well as to stockholders whom he could contact was, and is, that some steps should be taken to refinance the preferred stock of the company for the reason that it was receiving in dividends larger return on the money invested than was necessary or justified under his concept of proper, corporate practice. He had suggested several methods of meeting this situation, either by a long term bond issue, or note issue or a convertible preferred stock issue. He finally took a stand for the last method proposed. It is admitted that under the obligations of the company to the preferred stockholders, if dividends are declared, the preferred gets the equivalent of 6% before the common takes anything and if a 25c per share dividend should be declared on the common, the preferred will then receive 7%. Considerable arrearage on dividends due the preferred has accumulated throughout the years. The plaintiff insists that this percentage which the preferred shares receives will, in instances, reach from 9 to 11% on the money invested.

To bring about action of the corporation in accord with plaintiff's views, he brought to his assistance a number of investment concerns and stockholders who in combination turned their voting rights over to the plaintiff by their proxies. Letters were sent to stockholders by a committee made up of T. D. Casserly, of Doyle & O'Connor, Chicago, Philip A. Carret, of Carret, Gruman & Co., New York, N. Y., dealers in Investment Securities, and the plaintiff. As a result of the efforts of the committee at the annual meeting of the company in January of 1946 the plaintiff received, as a candidate for director of the company, a total of 155,603 votes by cumulative voting, representative of more than 20,000 shares of stock, preferred and common. Each of the seven directors elected received 181,881 votes or more.

At all times the plaintiff has conceded the high character of the officers and directors of the company, commended their conservative management but in his one difference with them, has taken the view that the common stock of the company is worth more than it is bringing and that, upon a retiral of the preferred stock with arrearages upon some plan whereby it would not receive such a large sum in dividends the common stock would be made more valuable. That refinancing upon the general plan suggested by the plaintiff is feasible and de-

-sirable is conceded by the management, but it is claimed that it is not timely, because more post war experience as to the ability of the corporation to make profits should be available before any such action is taken. Manifestly, this is a question for consideration of all stockholders in the light of full development of all aspects of the financial structure and business experience of the company. In the letters to the stockholders the foregoing attitude of plaintiff was the dominant argument for the votes of the stockholders.

At no time does it appear that the plaintiff has attempted to depreciate the company assets, the good will of the company, its rating, or question the character of the management. On the contrary, his position has been to the effect that the company, in the light of its business experience, its capital structure, its income and its reserves, without any detriment to its credit rating, could retire its preferred stock and issue new at a lower rate.

Upon the claim that the plaintiff is not acting in good faith as a stockholder but for the purpose of securing the list of stockholders, either to sell to other investment dealers or to employ it solely for the benefit of himself and his corporation, the record is silent unless such conclusion be drawn from inference only. It does not appear that the plaintiff by securing the list of stockholders will be in any superior position to others on the Board and the Directorate, nor that, in the face of the presumption of good faith, he intends to sell the list to any other person or company.

The plaintiff has spent his own time, money and effort to further the advancement of the proposals which he has made and which he claims are to the interest of the company. If he secures the list of stockholders, he will thereby be placed upon an equal footing with the management and directors, who now represent the majority of the stockholders, to place before the shareholders such matter and argument in support of the plans as he has in mind for their consideration.

As against these claims of the plaintiff, the defendant urges bad faith on his part in the particulars set up in its answer. It claims and produces evidence at length to support its view that plaintiff's plans are untenable and, if consummated, would result in the weakening of the financial structure of the corporation, impair its credit and lessen its capacity to meet competition; that a purpose in securing the list of stockholders is for speculation and for his own pecuniary gain. It asserts that the letters sent out by plaintiff's committee in many instances, made false statements and, in others, used half truths instead of the whole truth.

Much latitude must necessarily be accorded a committee in presenting reasons supporting its claim to stockholders for their proxies and if unjustified or unwarranted conclusions are drawn from the facts, as claimed by those who oppose, they should very properly be set up in an answer to stockholders. We find nothing in the letters from plaintiff's committee to the stockholders which is a wilful misrepresentation of a fact or facts, as therein stated, although some of them could have been developed more at length.

It is urged that the plaintiff desires a list of stockholders so that he may deal in the common stock for speculation and for pecuniary gain. Manifestly, a great number of investors in stocks could likewise be properly so charged. Indeed, it is probable that the majority of investors in common stock are engaged in a speculative venture. We are of opinion that this alone is not a valid reason to preclude a stockholder from an inspection of the records of his corporation. Obviously, the defendant, who deals in investment securities, may by the receipt of the list of stockholders be advantaged in his business of dealing in investment securities. That this is the controlling or major purpose of his demand upon the company does not appear. His interest as a stockholder, and as a representative of those to whom he has sold the stock of the corporation, is substantial and not nominal.

In our judgment, this question of the effect on plaintiff's right to relief sought by reason of his business advantage, if he secures the list of stockholders, is the only one of substance in this case and upon it authorities in Ohio have little to say. They are numerous elsewhere and there is considerable difficulty in reconciling the holdings. In Day & Co. v Booth, et al., 123. Me. 443, subject of an annotation in 43 A. L. R. 782, it was held that:

"A broker who purchases a share of stock in a corporation to obtain access to the list of stockholders for the purpose of trading in the stock of the corporation is not interested in the affairs of the corporation within the meaning of a statute providing that the books shall be opened to the inspection of persons interested. * * * "

As a basis for this pronouncement the Court found that,

"The petitioner is the owner of only one share of stock in each of the corporations concerned; that each of these shares was acquired for the sole purpose of laying a foundation to demand a list of stockholders in each company; * * * "

In Knox v Coburn, a decision by the same Court (Supreme Judicial Court of Maine), 104 Atl. 789, the Court held:

"A member of stock selling firm, who buys stock in corporation for purpose of securing names of all the holders of such stock, has the right, * · * · to inspect the stock books and make list of stockholders for use in selling such stock; his motive in obtaining such list not being improper, vexatious or unlawful."

And to like effect in State, ex rel. Costello v Middlesex Banking Co., 88 Atl. 861.

Appellee cites Guthrie v Harkness, 199 U. S. 148, and particularly a quotation from the opinion of Mr. Justice Day, wherein it is said:

"The writ should not be granted for **speculative purposes**, or to gratify idle curiosity, or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information for legitimate purposes." (Emphasis added)

Re: Stineway, 159 N. Y. 250, and Thompson on Corporations, Par. 4412, et seq. are cited. In Guthrie v Harkness, the stockholder was granted the right of inspection of the books of his corporation and the discussion related only to the general authority and obligation of the court in such cases. In Re: Stineway, 159 N. Y. 250, 53 N. E. 1103, the court supported the right of the stockholder to investigate the books of the corporation. The defense was hostile to the interest of the stockholders. There is no suggestion in the opinion that any claim was made defensively that the stockholder desired an inspection to further any speculative design, but the Judge writing the opinion makes substantially the same observation as we have heretofore quoted from Guthrie v Harkness, and cites Phoenix Iron Company v Commonwealth, 113 Pa. St. 563, 572, 6 Atl. 75, 79. In this case it was held that upon the petition of the stockholders based upon fraudulent mismanagement of the affairs of the company he was entitled to an examination of the books and papers of the corporation. There was nothing whatever before the court respecting any defense of speculative purposes· actuating the petitioner in his suit but the court made the general observation which is found in the quoted matter heretofore and it is carried into the 2nd syllabus

to which is appended a note referring to Huyler v Cragen (N. J.) 2 Atl. Rep. 274. In this case it appeared that as stockholders of the corporation the applicants were desirous of knowing something about its affairs. The court granted the relief. There is no mention of speculative purposes on the part of the applicants, either in any syllabus or in the opinion. The only defense asserted was that one of the applicant-stockholders had vilified the company and its officers.

In Thompson on Corporations, 3rd Edition, Par. 4534, which apparently is the only applicable section therein, (the citation in the appellee's brief and in the opinion in Guthrie v Harkness may be to another Edition) it is interesting to note that the author does not say that the writ will be refused where it appears that it is for speculative purposes but that it has been held, that it should be refused for purely speculative purposes. Thompson cites State ex rel Bruning v Hoboken Printing and Publishing Co. et al, (N. J.) 50 Atl. 906, wherein the court found that the applicant for inspection of the books had not complied with the requisite in New Jersey that a specific purpose be shown and he had offered no such proof. To like effect is Norris v Broadview (Ill.) 52 N. E. 769.

Of the cases cited, and those examined on our own initiative, we find but one wherein the relief sought by the stockholder was denied, and none in which any issue was drawn or decided upon the speculative purpose of the stockholder in making his application for an inspection of the books. Where the language which we have heretofore quoted had its source, we can not find. That it is obiter dicta in the opinions discussed is manifest. We are satisfied that if speculative purpose of a stockholder in demanding an inspection of the books of his corporation will in any situation preclude such an inspection the rule is as announced in Thompson on Corporations.

It is improbable that a stockholder who has substantial holdings in a corporation and represents others who own many shares would be denied access to the books, records and list of stockholders of the corporation solely because, if given a list of stockholders, he would thereby receive something of advantage in the operation of his business. It may be safely said that no one of the cases cited upon the subject establishes a criterion which would bar the plaintiff here, upon the facts as they must be resolved, from the relief which he seeks.

The case as made by the defendant is a challenge to this court to make determination whether or not plaintiff's proposals for refinancing the company are sound.

That is not our obligation nor is the question involved, except as it may relate to the determinative issue, namely, the good faith of plaintiff, and whether or not his request is for unreasonable or improper purposes.

We might, if it were an issue, hold that in the light of the experience of the defendant corporation throughout the years of its operation, both during and before and after the war, the policy of the management is sound and should not be disturbed. But this is not for our determination but for the stockholders whose right it is to shape the policy of its own representatives. If the plaintiff's proposal is without merit and would work to the disadvantage of the corporation, it is to be presumed that the stockholders are qualified to make intelligent and correct decision on the matter, but it should not prevent him having a free, full and fair opportunity to present his views as to the management and organization of the corporation to any and all stockholders. The fact, as suggested by one of the officers of the corporation, that stockholders should not be annoyed by being approached on various propositions is in no sense an answer to the right accorded to every stockholder who acts in good faith under the authority of the statute.

Giving application to the well defined legal principles which govern the right of the stockholder under the applicable section of the Code, we must hold that the presumption of good faith which attends plaintiff's request for an inspection of the records and books and list of the stockholders has not, upon the whole record, been overcome and the proof is not found in this record that his request is either for unreasonable or improper purposes.

The finding and judgment will therefore be for the plaintiff.

WISEMAN, PJ, and MILLER, J, concur.