**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**HOUSING AUTHORITY OF the CITY OF DERBY et al., Defendants-Appellants.**

**No. 294, Docket 28331.**

United States Court of Appeals
Second Circuit.

Argued March 5, 1964.

Decided May 8, 1964.

Roman M. Drauszewski, Derby, Conn., for defendants-appellants Housing Authority of City of Derby and Leonard Waleski and others as members of said Authority.

Ernest W. McCormick, Hartford, Conn., Sp. Counsel for defendant-appel-

lant State of Connecticut. Robinson, Robinson & Cole, Hartford, Conn., of counsel.

Robert C. Zampano, U. S. Atty. for Dist. of Connecticut (John D. Adams, Asst. U. S. Atty.), for appellee.

Before WATERMAN and KAUFMAN, Circuit Judges, and DIMOCK, District Judge.*

DIMOCK, District Judge:

This is an appeal from a judgment of the District Court for the District of Connecticut granting the application of the United States for a writ of mandamus. Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, the proceedings below were in accordance with Connecticut practice. The United States sued as holder of a money judgment against the Housing Authority of the City of Derby, Connecticut, hereinafter the Authority. The mandamus judgment directed the members of the Authority to pay over to the United States, on account of its money judgment, funds in the amount of $26,185.65 which had been allocated to certain Moderate Rental Housing Projects and which were on deposit in the Derby Savings Bank and the Ansonia Savings Bank. The defendants, the State of Connecticut and the Authority and its members, opposed the application. The District Court overruled the opposition on the ground that, if the State had any property interest in the deposits, it was no more than an equitable lien and that a mere equitable lien on a savings bank account was not protected against third party creditors.

We hold that the members of the Authority were under no duty to pay these deposits to the United States and that they should not have been directed to do so by mandamus. As appears from the following discussion, the statutory scheme under which the Authority worked required that each of its projects

stand on its own feet while the mandamus judgment below would require the Authority to make up a deficit on one project out of the funds allocable to others.

The money judgment to enforce which mandamus was sought is based on a so-called Advance Loan Note of the Authority, in the original sum of $51,193, payable to the Public Housing Administration.[1] This note evidenced the Authority's indebtedness arising from a federal loan made to enable the Authority to meet planning expenses of a proposed Low Rent Housing Project which was to be designated Project No. Conn. 17-1. The note recited that it irrevocably pledged the full faith and credit of the Authority for its payment and that it constituted a first lien and charge upon all of the revenues to be derived by the Authority from Project No. Conn. 17-1, a pledge of the annual contributions to be paid to the Authority by the Public Housing Administration with respect to the project and a mortgage on all property then owned or thereafter acquired by the Authority in connection therewith.

It is to be noticed that the note created no lien, charge, pledge or mortgage except with respect to property derived from Project No. Conn. 17-1 or acquired by the Authority in connection therewith. A further significant provision of the note was the recital that it was issued pursuant to the Constitution and statutes of the State of Connecticut. Under that provision the holder's rights are governed by the statutory scheme for the operation of the Authority.

Project No. Conn. 17-1 was abandoned. Thereupon the Authority repaid to the United States, apparently from the unexpended balance of the proceeds of the loan, $26,981.27. The judgment sought to be enforced by mandamus was obtained for the balance.

---

* Sitting by designation.

1. No explanation has been advanced for suit in the name of the United States of America rather than the Public Housing Administration, as seems to be required by section 1405(b) of title 42 United States Code, but this point is not raised by defendants.

The opposition of the State and the Authority to the enforcement of the judgment by mandamus was based upon a combination of the provisions of the statutory scheme for the operation of the Authority and a contract entered into between the State and the Authority pursuant thereto which, they claim, imposed upon the members of the Authority the duty not to expend the funds which were held in the savings banks upon any projects except those to which they were allocated. That this position was correct appears from the statutory and contractual provisions hereinafter analyzed.

The history of the savings bank deposits is as follows. Sections 142i–152i of the 1947 Supplement to the General Statutes of Connecticut authorize the state to enter into agreements with local authorities for state financial assistance for so-called Moderate Rental Housing Projects. Sections 102a–124a of the 1949 Supplement to the General Statutes of Connecticut authorize such assistance in the form of loans to be repaid only from the income received by an authority from the operation or sale of the projects developed with the proceeds of the loans. Section 109a provides that each authority shall fix the rentals of its projects at the lowest possible rates and that "no housing authority shall construct or operate any such project for profit or as a source of revenue to the municipality." Section 115a of Chapter 52 of the 1949 Supplement to the General Statutes of Connecticut provides for state approval of "an operation or management plan of each housing project, which shall provide an income adequate for debt service, administration, other operating costs and the establishment of reasonable reserves for repairs, maintenance and replacements, vacancy and collection losses."

Pursuant to this authority the state entered into assistance agreements with the Housing Authority of the City of Derby, each one of which provided for the development of a separate moderate rental housing project and approved a management plan as required by statute. By each of these agreements the state committed itself to advance to the Authority such sums as should be required to finance the development of the project up to an amount fixed by the agreement as a maximum loan commitment. By the terms of each agreement the Authority pledged to the payment of principal and interest of the loan "(a) all of the rents and revenues derived from the Project after deduction only of administration and other operating costs and the establishment of reasonable reserves for repairs, maintenance and replacements, vacancy and collection losses, and (b) all proceeds from the sale of the whole or any part of the Project." Each agreement contained a provision for the setting up of a separate bank account entitled "Administration Fund" for the deposit of the funds available to pay the costs of operating and managing the project of which the following, for Lakeview Project MR–39, is an example:

"23. The Local Authority will deposit all funds received from the operation and management of the Project and all other funds available to pay the costs of operating and managing the same from whatever source derived, including proceeds of insurance and eminent domain proceedings, in a bank approved by the State Authority, in a separate bank account entitled Administration Fund: Project Lakeview (MR 39), and will use said funds for the purpose and in the order as follows:

"*First*: To pay salaries of Local Authority personnel and overhead and expenses of such Authority to the extent to which such items are chargeable to the Project under the Management Plan or any revision thereof;

"*Second*: To pay all costs directly chargeable to the maintenance and operation of the Project as set forth in the Management Plan or any revision thereof, including the payment to the City of Derby in each year of a sum in lieu of real property taxes and special assessments of any kind, as

determined by said City with the approval of the State Authority;

"*Third*: To pay instalments of principal and interest on the Loan as the same shall become due; and

"*Fourth*: To establish a Repairs, Maintenance and Replacement Reserve and a Vacancy and Collection Loss Reserve computed as set forth in the Management Plan or any revision thereof, and such further Reserves as may from time to time be required by the State Authority or the Committee.

The Local Authority will credit any balance of funds or net operating income not required for the purposes aforesaid to a separate account entitled Debt Service Reserve Account, and all charges against said Account shall be as directed and approved by the State Authority."

Pursuant to this requirement of the assistance agreements the Authority set up six different Administration Funds in separate bank accounts for six different and separate projects other than Project No. Conn. 17–1.

Under date of July 31, 1956, the state issued a manual release authorizing an authority to invest temporary moneys in its Administration Fund accounts, in excess of amounts needed for immediate disbursement, in insured savings accounts in savings banks in order that the authority might receive interest thereon. Pursuant to that release, the Authority withdrew from the various Administration Funds sums which were then deposited in the Derby Savings Bank and the Ansonia Savings Bank. It is these sums which the members of the Authority have been directed by the court below to pay over to the United States.

■ The mandamus judgment appealed from, if enforced, would require the members of the Authority to break the Authority's contract with the State that the proceeds of the operation of each project should be used for no purpose other than the debt service and the operation of that project.

More importantly the statutes above summarized require that the operation of each project shall be managed so as to provide for operating expenses and debt service of that project and no more. The unpaid debt to the United States for planning expenses for the abortive Project No. Conn. 17–1 represents a deficit incurred for the account of Project No. Conn. 17–1. To deduct this deficit from the income of the other projects would force the members to violate the law by charging rents in those projects higher than required for their operation.

It was to avoid just such results that execution was eliminated as a means of collection from an authority and mandamus substituted. If the United States had had the right of execution here it would have been entitled to the deposits because no one had a perfected lien thereon. By mandamus, however, it could do no more than require the members of the Authority to perform a legal duty. Far from being under a duty to make payment of the deposits to the United States they were under a duty not to do so.

■ As was said of the writ of mandamus in State ex rel. Costello v. Middlesex Banking Co., 87 Conn. 483, 485, 88 A. 861, 863, "It will not be issued to accomplish a wrong or in aid of illegitimate or unlawful action."

The judgment is reversed and the complaint dismissed.

WATERMAN, Circuit Judge (concurring):

I concur in the unfortunate result reached by the majority, unfortunate because, unless Connecticut passes special legislation, we have forever prevented the United States, a judgment creditor, from satisfying its judgment out of available funds in the hands of its judgment debtor, the Housing Authority of the City of Derby, and have created another government "give-away" program where it is apparent that none was originally intended. The note issued to the United States by the Housing Authority expressly stated that it was issued pur-

suant to the Constitution and statutes of Connecticut. I join my colleagues in reversing the trial court on the sole ground that issuance of the writ of mandamus would require an act to be done which would be contrary to the Connecticut statutory scheme for the administration and operation of its local housing authorities, as set forth in General Statutes of Connecticut, §§ 8–45, 8–72, which scheme apparently prohibits using income realized from the operation of one housing project to pay debts incurred in the operation of another housing project. It is my belief that the Assistance Agreements which this authority entered into with the State of Connecticut do not bar issuance of the writ, either on the ground that the Assistance Agreements charged the funds now sought by the United States with an equitable lien, or on the proposition that in some way these agreements may be legitimately looked to as proper aids in determining the statutory scheme the Connecticut legislature devised for administering its housing programs.